IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

CASE NO.: 7:25-mc-0001-M-BM

| | |
|---|---|
| In re: ) | |
| ) | |
| APPLICATION OF NOVO NORDISK A/S, ) | **NOVO NORDISK A/S'S** |
| FOR *EX PARTE* ORDER PERMITTING ) | **RESPONSE IN OPPOSITION TO** |
| DISCOVERY FOR USE IN FOREIGN ) | **JAMES C. MCCABE, M.D.'S** |
| PROCEEDINGS ) | **MOTION TO QUASH** |
| ) | **DEPOSITION SUBPOENA** |
| ) | |
| ) | |

## INTRODUCTION

Pursuant to this Court's order granting its 28 U.S.C. § 1782 application [DE-9], Novo[1] served a deposition subpoena on Dr. James McCabe, seeking discovery for use in Foreign Court Proceedings in Singapore and the Cayman Islands against Dr. McCabe's former employer, KBP, KBP's founder and executive chairman (Dr. Huang Zhenhua), and KBP's parent company (KBP Cayman).

Dr. McCabe's motion to quash Novo's deposition subpoena is properly denied. First, contrary to Dr. McCabe's argument, Section 1782 and Supreme Court precedent permit an application for deposition discovery for use in a foreign court even if there is a related arbitration. Second, Dr. McCabe's argument based on his confidentiality agreement with KBP is without merit because KBP has no legitimate confidentiality interest in the topics Novo seeks to explore in Dr. McCabe's deposition—which relate to a single drug, Ocedurenone, the rights to which Novo acquired, along with the rights to all related information. In any event, any confidentiality concerns can be addressed by a protective order. Finally, Dr. McCabe has failed to establish that he will be

---

[1] Novo uses the same short-form references defined in its memorandum in support of the Section 1782 application. *See* [DE-8].

unduly burdened by a deposition of his personal knowledge by asserting he lacks documents to prepare and will receive only the statutory witness fee.

## STATEMENT OF FACTS

On March 24, 2025, Novo applied to this Court for an *ex parte* order pursuant to 28 U.S.C. § 1782 permitting it to take discovery, including a deposition, from Dr. McCabe, for use in the Foreign Court Proceedings. [DE-1]. Novo submitted declarations from lead counsel in each of the Foreign Court Proceedings, who explained that the proceedings were commenced to obtain worldwide freezing orders to prevent the KBP Defendants from dissipating assets that will be used to satisfy any arbitration award Novo may obtain against them. [DE-1-1] ¶¶12–14; [DE-1-5] ¶¶12–13, 16; *see* Joachim Decl. ¶17 (attached as Exhibit 1).[2]

The Singapore and Cayman courts granted Novo's applications for freezing orders, finding that Novo has a "good arguable case" and/or that there is a "serious issue to be tried" that KBP and Dr. Huang fraudulently induced Novo to enter into an asset purchase agreement (the "APA"), pursuant to which Novo acquired rights to KBP's compound, Ocedurenone. [DE-1-1] ¶5; [DE-1-5] ¶6. The proceedings continue, including because KBP and Dr. Huang have moved to set aside the Singapore freezing order. *See* Joachim Decl. ¶12.

On April 2, 2025, this Court granted Novo's application to take discovery from Dr. McCabe, finding that Novo satisfied the Section 1782 mandatory factors and that the discretionary factors weighed in favor of granting the application. [DE-9] at 6–7. Novo served deposition and document subpoenas on Dr. McCabe. [DE 21-2 & 21-3].

---

[2] Separately, and without prior notice to Novo, KBP filed an arbitration against Novo on March 22, 2025. Joachim Decl. ¶18.

In response to the document subpoena, Dr. McCabe attested that he has no responsive documents. *See* [DE-21] ¶8. On April 17, 2025, Dr. McCabe's counsel advised Novo's counsel that Dr. McCabe would move to quash the deposition subpoena and asked to reset the compliance date for mid-May. Joachim Decl. ¶14. Given the urgency with which Novo needs the discovery from Dr. McCabe, Novo declined, but agreed to reset the compliance date to April 30. *Id.*

On April 30, 2025, Dr. McCabe moved to quash the deposition subpoena or, alternatively, for a protective order suspending the deposition until KBP[3] can be heard. [DE-20]. Dr. McCabe does not dispute that he has personal knowledge regarding Novo's claims in the Foreign Court Proceedings. [DE-21]. Dr. McCabe argues that the deposition subpoena should be quashed because (1) Novo's Section 1782 application is inconsistent with Supreme Court precedent; (2) the subpoena would require Dr. McCabe to disclose material subject to a confidentiality agreement with KBP; and (3) the subpoena is unduly burdensome. [DE-22] at 1–2.

Also on April 30, Novo sent counsel for Dr. McCabe and KBP a proposed discovery protective order. Joachim Decl. ¶15; Proposed Protective Order (attached as Exhibit 4). Counsel for KBP stated that it would consider Novo's proposal. Joachim Decl. ¶15; 5/1/2025 Email Correspondence (attached as Exhibit 5). Dr. McCabe "defer[s] to KBP with respect to negotiating the contours of a protective order, but . . . [has noted] that any discussion about a protective order is improper and premature" while this motion to quash is pending. Joachim Decl. ¶16 & Ex. 5.

---

[3] KBP has moved to intervene in this proceeding, [DE-12], and Novo does not object to KBP's motion. Joachim Decl. ¶13.

## ARGUMENT

**I. NOVO APPROPRIATELY SEEKS DISCOVERY FOR USE IN PROCEEDINGS BEFORE FOREIGN TRIBUNALS.**

This Court properly granted Novo's Section 1782 application where Novo showed that it was seeking discovery for use in the Foreign Court Proceedings. *See* [DE-9] at 5–6. Contrary to Dr. McCabe's argument, *ZF Automotive US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619 (2022), does not provide a basis to prevent his deposition. *See* [DE-22] at 4-5. Although Dr. McCabe does not dispute that the Singapore and Cayman courts qualify as foreign tribunals under Section 1782, he asserts that the arbitration proceedings between Novo and KBP, and not the Foreign Court Proceedings, are "the driver" for Novo's discovery requests, and that this is contrary to *ZF Automotive*. *Id.* Dr. McCabe is incorrect.

The fact that the Foreign Court Proceedings relate to arbitration proceedings does not make Novo's application impermissible. *ZF Automotive* held that "only a governmental or intergovernmental adjudicative body constitutes a 'foreign or international tribunal'" as those terms are used in Section 1782. 596 U.S. at 638. It did not limit Section 1782 to foreign proceedings unrelated to arbitration—nor is there any basis for such a limitation in Section 1782. *See id.*; 28 U.S.C. § 1782. Indeed, courts both before and after *ZF Automotive* have granted Section 1782 discovery for use in court proceedings even where, as here, the foreign court proceedings were related to arbitration proceedings. *See, e.g.*, *In re Pub. Joint-Stock Co. Bank Otkritie Fin. Corp.*, No. 22-mc-50 (VSB), 2023 WL 4928227, at *3 & n.1 (S.D.N.Y. Aug. 2, 2023) (UK court proceeding met Section 1782 requirements even though related arbitration did not); *HRC-Hainan Holding Co. v. Yihan Hu*, No. 19-mc-80277-TSH, 2020 WL 906719, at *8–9 (N.D.

Cal. Feb. 25, 2020) (court proceeding to preserve assets for arbitration award met "for use" in foreign proceedings requirement).[4]

To the extent Dr. McCabe argues that the "real motivator" of Novo's application is the arbitration proceedings and not the Foreign Court Proceedings, [DE-22] at 4, that argument also fails. The Second Circuit rejected essentially the same argument in *In re B&C Kb Holding GmbH*, No. 23-1014(L), 2024 WL 3170983 (2d Cir. June 26, 2024) (summary order). In *B&C*, the appellants argued that a Section 1782 applicant was "using [foreign] criminal investigations as a pretext to obtain discovery for use in its ongoing German arbitration, which does not qualify" as a foreign proceeding under *ZF Automotive*. *Id.* at *1. The Second Circuit disagreed, holding that (1) "Section 1782 does not prevent an applicant who lawfully has obtained discovery under the statute with respect to one foreign proceeding from using the discovery elsewhere unless the district court orders otherwise," and (2) appellants failed to establish that the applicant was using the criminal investigations merely as a pretext to obtain discovery for the arbitration proceedings. *Id.* at *3–4 (quotation omitted). Dr. McCabe's argument suffers from the same two fatal flaws.

First, the theoretical possibility that the discovery could be used in arbitration is not a reason to deny discovery that is relevant to the Foreign Court Proceedings. *See id.* at *3. As the Fourth Circuit has explained, to meet the "for use" requirement, an applicant "need only show that there is a reasonable possibility that the evidence sought will be employed with some advantage or serve some use in the proceeding." *In re Banco Mercantil del Norte, S.A.*, 126 F.4th 926, 931 (4th Cir. 2025) (citation omitted). Novo has made that showing based on the Foreign Court Proceedings, as the Court previously concluded. [DE-9] at 5. The "for use" inquiry ends there—

---

[4] Although the *HRC-Hainan* court's decision that a private arbitration satisfied Section 1782 was abrogated by *ZF Automotive*, the court concluded that the Hainan court proceedings satisfied Section 1782 for independent reasons. 2020 WL 906719, at *7–9.

so long as the discovery could "serve some use" in the foreign proceeding, *Banco Mercantil*, 126 F.4th at 931, the requirement is satisfied even if it could theoretically also be used later in another proceeding. *See id.*; *see also In re Mother's Milk, Inc.*, 5:20-mc-4-M, 2020 WL 2514315, at *6 (E.D.N.C. May 15, 2020) (no authority prohibits granting Section 1782 motion "simply because the same discovery" for foreign proceeding "might inform or be used in future" U.S. action).

*ZF Automotive* does not change this analysis. As the Second Circuit explained in *B&C*, "*ZF Automotive* is inapposite" because that case "did not even address Section 1782's 'for use' requirement," and its holding "doesn't change the undisputed fact that the [foreign proceedings] plainly *are* qualifying proceedings that involve a governmental body under Section 1782." 2024 WL 3170983, at *3.

Second, and independently, Dr. McCabe has "failed to establish pretext." *See id.* Dr. McCabe offers no basis for his speculation that Novo is motivated to obtain his testimony because of the arbitrations. *See* [DE-22] at 4–5. In contrast, Novo has offered affidavits from counsel in both Foreign Court Proceedings explaining how Novo intends to use Dr. McCabe's testimony. [DE-1-1]; [DE-1-5].

Novo also has proven through its actions that its intentions are not pretextual. Novo previously filed a similar Section 1782 application against another third party—Otsuka—in the Northern District of California, which that court granted. [DE-1-13]. On April 25, 2025, Novo filed its response to the application by KBP and Dr. Huang to set aside the freezing order in the Singapore proceedings, using documents it obtained from Otsuka in its filing. Joachim Decl. ¶12.

Like Otsuka, Dr. McCabe is a third party with information useful to Novo's claims in the Foreign Court Proceedings. *See* [DE-1-1] ¶13; [DE-1-5] ¶13. Dr. McCabe was a KBP employee for over five years, most recently serving as Chief Medical Officer through October 2024. [DE-

6

Case 7:25-mc-00001-M-BM     Document 23     Filed 05/05/25     Page 6 of 11

21] ¶2. He was closely involved in overseeing the Phase 2 study of Ocedurenone, in preparing the Phase 2 Clinical Study Report, and in the due diligence processes between KBP and each of Otsuka and Novo. *See* [DE-1-1] ¶13. His testimony will "serve some use" in the Foreign Court Proceedings. *See Banco Mercantil*, 126 F.4th at 931.

## II. DR. MCCABE'S MOTION TO QUASH PURSUANT TO RULE 45 IS PROPERLY DENIED.

Dr. McCabe's arguments under Rule 45 also fail. "The party moving to quash the subpoena must show that it is entitled to the relief it seeks." *Gilliam v. Bertie Cty. Bd. of Educ.*, 2:20-CV-00016-D, 2022 WL 6251966, at *2 (E.D.N.C. Oct. 7, 2022) (Numbers, Mag. J.). Courts weigh a "subpoena's benefits against its burdens" by "considering the marginal benefit of the subpoena in litigating important issues" against burdens of "monetary expense, privacy interests, and overbreadth." *Id.* (citations omitted). "[C]onclusory or generalized statements" as to purported burden are insufficient "as a matter of law." *Baker v. Americredit Fin. Servs., Inc.*, No. 5:24-CV-359-M, 2025 WL 985349, at *1 (E.D.N.C. Apr. 2, 2025) (Jones, Mag. J.) (quotation omitted).

Because Dr. McCabe fails to show that either confidentiality or burden concerns outweigh the benefit of the subpoena, his motion to quash is properly denied.

### A. Dr. McCabe's Confidentiality Obligations to KBP Are Not a Basis to Quash the Subpoena.

Dr. McCabe's confidentiality agreement with KBP does not warrant quashing the subpoena. *See* [DE-22] at 5–6. Under the APA, Novo obtained the rights to, among other things, all Clinical Data related to Ocedurenone and all Books and Records related to Ocedurenone, including all rights of KBP and KBP Biosciences USA Inc. in any Books and Records in the possession of Third Parties. APA § 2.1(a)(v)–(vi) (attached as Exhibit 2). Clinical Data and Books and Records are defined broadly to extend to essentially all materials relating to Ocedurenone. *Id.*

§ 1.1. Because KBP transferred to Novo rights to virtually all materials relating to Ocedurenone, KBP no longer has any protectable interest in that information. *See id.* § 2.1(a)(v)–(vi).

Dr. McCabe cannot avoid his deposition by speculating that the deposition could potentially cover unspecified "KBP policies and procedures and other confidential matters" that were not transferred under the APA. [DE-22] at 5–6. Novo seeks Dr. McCabe's testimony on topics relating to Ocedurenone and KBP's transaction with Novo. *See* [DE-1-1]; [DE-1-5]. Dr. McCabe's speculation that the examination could cover extraneous confidential information does not justify quashing the subpoena. *See Baker*, 2025 WL 985349, at *1 ("conclusory or generalized statements fail to satisfy th[e] burden" to obtain protection from responding to discovery (quotation omitted)).

Regardless, confidentiality concerns would not provide a reason to quash the subpoena. There is a "strong presumption in favor of requiring a witness to give testimony," even in cases where the testimony may cover privileged or confidential matters. *Beard v. Am. Express Travel Related Servs. Co., Inc.*, 2005 WL 8173957, at *2 (W.D.N.C. Apr. 21, 2005). Indeed, "witnesses should not be able to create a privilege for themselves and frustrate the right of the parties to obtain information necessary to the lawsuit vis a vis the agreement." *Id.*

Thus, when discovery may implicate confidential or privileged information, the appropriate course is to "order that the testimony be taken subject to the protective order," not to quash the subpoena. *See id.*; *see also Primrose v. Castle Branch, Inc.*, 7:14-CV-235-D, 2016 WL 917318, at *7 (E.D.N.C. Mar. 8, 2016) (Gates, Mag. J.) (rejecting plaintiff's "baseless" privacy objection to document subpoena where defendant "indicated its willingness to enter into a protective order appropriately protecting the confidentiality of the documents produced pursuant to the subpoena" and "the court has authority to impose appropriate protections"). Novo has

offered to stipulate to a protective order to safeguard protectable information disclosed at the deposition. Joachim Decl. ¶15. Indeed, it has even provided a draft of that order to Dr. McCabe and KBP. *Id.* And KBP requested and agreed to a protective order in the Otsuka Section 1782 action to address its confidentiality concerns. *Id.* ¶9.

      **B.    Dr. McCabe Fails to Establish That the Subpoena Is Unduly Burdensome.**

Dr. McCabe's "conclusory" and "generalized" assertions that the subpoena is unduly burdensome fail to establish a basis to quash the subpoena. *See Baker*, 2025 WL 985349, at *1.

Dr. McCabe's lack of access to information and documents does not make the deposition subpoena unduly burdensome. *See* [DE-22] at 6. Dr. McCabe cites no authority for that position, and the opposite is true—if Dr. McCabe possesses few or no documents to review before his deposition, Novo's deposition subpoena is less, not more, burdensome. *See, e.g.*, *Sandoz, Inc. v. United Therapeutics Corp.*, No. 20-mc-1444, 2021 WL 230980, at *1 (W.D. Pa. Jan. 22, 2021) (concluding that "if [the subject of a subpoena] does not possess any responsive [documents], then there would be no burden in responding to the subpoena . . . [or] by participating in a deposition, other than the ordinary burden of doing so").

Further, as Dr. McCabe acknowledges, Novo does not request a Rule 30(b)(6) deposition, and Dr. McCabe is under no obligation to educate himself on matters beyond his personal knowledge. [DE-22] at 3. Novo is entitled to depose Dr. McCabe on his best recollection of events. *See, e.g.*, *Edge-Works Mfg. Co. v. HSG, LLC*, No. 7:17-CV-00223-FL, 2019 WL 4670753, at *1 (E.D.N.C. Sept. 24, 2019) (Numbers, Mag. J.) (declining to quash subpoenas where targets denied personal knowledge because nonparties "may have knowledge relevant to the parties' claims or defenses"). And if he wishes to do so, Dr. McCabe can readily obtain publicly available

9

Case 7:25-mc-00001-M-BM     Document 23     Filed 05/05/25     Page 9 of 11

documents regarding the conduct and results of the Phase 2 trial of Ocedurenone, including publications that he co-authored.[5]

Dr. McCabe's argument that he is unduly burdened because KBP has not agreed to compensate him for his time responding to the subpoena is also unavailing. *See* [DE-22] at 6. Dr. McCabe has identified no authority supporting the proposition that failure to compensate a fact witness beyond the standard witness fee provides a basis to quash a subpoena. *See id.* Accepting Dr. McCabe's argument would override Congress' decision on the amount of the witness fee. 28 U.S.C. § 1821. And it would require courts to quash deposition subpoenas in the many instances in which the witness receives only that fee.

Finally, any alleged burden must be weighed against the benefits of the subpoena "in litigating important issues." *See Gilliam*, 2022 WL 6251966, at *2. Here, Dr. McCabe was closely involved in managing the clinical trial sites in the Phase 2 trial, in analyzing the results from the trial and preparing internal analyses that showed the anomalous results at one clinical trial site in Bulgaria, and in the due diligence processes with Novo and Otsuka. [DE-1-1] ¶13. Dr. McCabe's testimony, based on his personal knowledge, goes to the core of Novo's claims in the Foreign Court Proceedings. *See id.* ¶16.

## **CONCLUSION**

Novo respectfully requests that the Court deny Dr. McCabe's motion to quash and order Dr. McCabe to appear at a deposition at a mutually agreeable time not later than seven days after the Court's order on this motion.

---

[5] *See, e.g.*, https://www.ahajournals.org/doi/epub/10.1161/HYPERTENSIONAHA.121.17073 (Dr. McCabe co-authored); https://pmc.ncbi.nlm.nih.gov/articles/PMC10570658/ (Dr. McCabe co-authored); https://clinicaltrials.gov/study/NCT03574363.

This the 5th day of May, 2025.

/s/ Kelly Margolis Dagger
Kelly Margolis Dagger
N.C. Bar No. 44329
ELLIS & WINTERS LLP
Post Office Box 33550
Raleigh, North Carolina 27636
Telephone:  (919) 865-7000
Facsimile:  (919) 865-7010
kelly.dagger@elliswinters.com

Mark P. Gimbel *(special appearance forthcoming)*
David Z. Pinsky *(special appearance forthcoming)*
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Telephone:  (919) 841-1000
Facsimile:  (626) 441-9137
mgimbel@cov.com
dpinsky@cov.com

*Counsel for Novo Nordisk A/S*