IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
CASE NO. 7:25-mc-0001-M-BM

|  |  |  |
|---|---|---|
| IN RE: | ) | **KBP BIOSCIENCES PTE. LTD.'S** |
|  | ) | **MEMORANDUM OF LAW IN** |
| APPLICATION OF NOVO NORDISK, | ) | **SUPPORT OF ITS MOTION TO** |
| A/S, FOR *EX PARTE* ORDER | ) | **VACATE ORDER GRANTING 28 U.S.C.** |
| PERMITTING DISCOVERY FOR USE | ) | **SECTION 1782 APPLICATION AND** |
| IN FOREIGN PROCEEDINGS | ) | **QUASH SUBPOENAS** |
|  | ) |  |
|  | ) |  |
|  | ) |  |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................... iii

PRELIMINARY STATEMENT ................................................... 1

FACTS

I.      KBP Develops Ocedurenone ......................................... 2

II.     KBP USA, a Wholly-Owned Subsidiary of KBP, Hires Dr. McCabe ............................... 3

III.    Novo Acquires Ocedurenone and Agrees to Arbitrate All Disputes ................................. 3

        A.      Asset Purchase Agreement ...................................... 4

        B.      Transition Services Agreement .................................. 4

        C.      Arbitration Agreements ......................................... 4

IV.     Novo Unilaterally Terminates Development ....................... 5

V.      KBP and Novo Begin Arbitrating Their Disputes ................ 5

VI.     Novo Claims It Needs Discovery From This Court in Order to Oppose KBP's Then-Forthcoming Application to Set Aside the Freezing Orders ................................. 6

        A.      Novo Files Section 1782 Petition and Serves Subpoenas ....................... 6

        B.      KBP Moves to Intervene ........................................ 7

        C.      Novo Premises Its Section 1782 Discovery on the Purported Need to Oppose KBP's Then-Forthcoming Application by KBP to Set Aside Freezing Orders ................................. 8

        D.      Novo Already Submitted its Opposition to KBP's Set-Aside, Nullifying its Claimed Justification for Discovery ................................. 9

ARGUMENT

I.      NOVO'S SECTION 1782 APPLICATION SHOULD BE VACATED BECAUSE IT IS INCONSISTENT WITH THE STATUTORY AIMS OF SECTION 1782, DISCRETIONARY FACTORS, AND SUPREME COURT PRECEDENT .................. 10

        A.      Applicable Legal Standards ..................................... 10

        B.      The Worldwide Freezing Orders Are Without a U.S. Equivalent .......................... 11

C.      Any Discovery Would Not Assist the Courts That Already Have Issued the Freezing Orders ................................................................................................12

D.      Novo's Subpoenas Are an Improper Fishing Expedition That Seek to Sidestep the Supreme Court's Prohibition on Using Section 1782 for Private Foreign Arbitration ....................................................................................17

E.      The Deposition Subpoena Places an Undue and Intrusive Burden on  Dr. McCabe, Who is Not a Party to the Foreign Proceedings ....................................21

II.      THE SUBPOENAS SHOULD BE QUASHED UNDER FRCP RULE 45 .....................23

A.      FRCP 45(d)(3)(A)(iv) ............................................................................................23

B.      FRCP 45(d)(3)(A)(iii) and 45(d)(3)(B)(i)..............................................................24

CONCLUSION ...................................................................................................................24

# TABLE OF AUTHORITIES

**Cases**                                                                                       **Page(s)**

*Al Fayed v. United States*,
210 F.3d 421 (4th Cir. 2000) ...............................................................11, 12, 18

*In re B&C Kb Holding GmbH*,
2024 WL 3170983 (2d Cir. June 26, 2024) .....................................................21

*In re Blue Oil Trading Ltd.*,
2009 WL 3247854 (W.D.N.C. Oct. 5, 2009)...................................................24

*Cook v. Howard*,
484 F. App'x 805 (4th Cir. 2012) ...................................................................23

*In re Eli Lilly & Co.*,
37 F.4th 160 (4th Cir. 2022) ...............................................................10, 12, 19

*In re Elliott Assocs. L.P.*,
2022 WL 1159692 ...............................................................................13, 17, 22

*Grupo Mexicano De Desarrollo v. Alliance Bond Fund*,
527 U.S. 308 (1999)........................................................................................11, 12

*Insulate America v. Masco Corp.*,
227 F.R.D. 427 (W.D.N.C. 2005)...............................................................23, 24

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004)...........................................................................1, 10, 11, 18

*Kemp v. Peterson*,
940 F.2d 110 (4th Cir. 1991) ...........................................................................15

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*,
460 U.S. 1 (1983)..............................................................................................21

*Pereira v. Nucor Corp.*,
2023 WL 4143229 (W.D.N.C. June 22, 2023) ................................................13

*In re Public Joint-Stock Co. Bank Otkritie Financial Corp.*,
2023 WL 4928227 (S.D.N.Y. Aug. 2, 2023)...................................................20

*Schaaf v. SmithKline Beecham Corp.*,
233 F.R.D. 451 (E.D.N.C. 2005) ...............................................................21, 23

*Snoznik v. Jeld-Wen, Inc.*,
259 F.R.D. 217 (W.D.N.C. 2009).....................................................................22

iii

*Virginia Department of Corrections v. Jordan*,
    921 F.3d 180 (4th Cir. 2019) ...............................................................................21, 22, 23

*ZF Auto. US, Inc. v. Luxshare, Ltd.*,
    596 U.S. 619 (2022)............................................................................................2, 18

## RULES

Fed. R. Civ. P. 45(d) ................................................................................... passim

## OTHER AUTHORITIES

*Three If By Equity: Mareva Orders & The New British Invasion*,
    19 St. John's J. Legal Comment. 673 (2005)....................................................11

R. Ough & W. Flenley,
    The Mareva Injunction and Anton Piller Order:
    Practice and Precedents xi (2d ed. 1993)………………………………………...11

iv

Intervenor KBP Biosciences Pte. Ltd. ("KBP") respectfully moves, under 28 U.S.C. § 1782, Rule 45 of the Federal Rules of Civil Procedure, and other applicable law and rules, to vacate the Court's Order dated April 2, 2025 ("Order") granting the Section 1782 application of Novo Nordisk A/S ("Novo") and to quash the subpoenas that Novo served upon Respondent Dr. James McCabe ("Dr. McCabe").

## PRELIMINARY STATEMENT

In October 2023, Novo acquired an in-development compound from KBP known as Ocedurenone and was required, as part of the acquisition, to use commercially reasonable efforts to develop Ocedurenone. As part of the transaction, the parties agreed to arbitrate any disputes (including conservatory relief) in New York. Within months after the acquisition, Novo precipitously canceled clinical trials for the drug, in breach of the purchase agreement.

Over three months ago, Novo secretly obtained (with no knowledge of or input from KBP) worldwide orders from courts in Singapore and the Cayman Islands, known as "*Mareva*" injunctions, freezing over $800 million of assets of KBP, its parent company, and its founder.

On the back of the *Mareva* injunctions (which have no U.S. equivalent), Novo subsequently obtained—also with no notice to or input from KBP—this Court's Order authorizing discovery under Section 1782 from Dr. McCabe, a former employee of a KBP subsidiary, and served subpoenas on him. This Court noted that the Order was "inherently limited by the *ex parte* nature of the current proceedings" and that a motion to quash could be filed.

The statutory aims of Section 1782, the discretionary factors outlined by the United States Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), and other Supreme Court precedent counsel in favor of vacating the Order and quashing the subpoenas. While Novo's Section 1782 petition was premised on the need to oppose KBP's then-forthcoming application to set aside the *Mareva* injunctions, KBP already has filed its set-aside application in

Singapore **and Novo already has opposed it,** thus mooting Novo's claimed use. Further, any discovery would not assist the *Mareva* courts. At the set-aside stage, they are focused on the risk of dissipation of assets—of which Dr. McCabe is not alleged to have any knowledge. They also assiduously avoid trying the underlying merits of the *Mareva* injunctions before them, and so do not adjudicate merits discovery. In all events, deposition testimony from Dr. McCabe (who has no responsive documents in his possession) may not even be admissible and will be accorded little to no weight.

Against this backdrop, Novo's insistence on getting deposition testimony from Dr. McCabe at this time reveals that its true intention is to obtain discovery for purposes of its arbitration against KBP and its founder in advance of (and in variance to) the discovery process therein. Not only is this an attempt by Novo to shirk its agreement to arbitrate under the purchase agreement, it is also an attempt to sidestep the Supreme Court's ruling in *ZF Auto. US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619 (2022), which definitively precludes using Section 1782 for purposes of private foreign arbitrations.

Finally, Novo's subpoenas place an undue burden on Dr. McCabe and contravene FRCP 45.

## FACTS[1]

### I. KBP Develops Ocedurenone

KBP, a small clinical-stage biopharmaceutical company founded in 2011, developed Ocedurenone (KBP-5074) to treat uncontrolled hypertension with potential application for cardiovascular and kidney disease. (*See* Hellmann Decl. Ex. 1-E.)

---

[1] KBP's Motion is supported by the declarations of Elizabeth A. Hellmann ("Hellmann Decl."), Cavinder Bull ("Bull Decl."), and Denis Olarou ("Olarou Decl.").

## II.    KBP USA, a Wholly-Owned Subsidiary of KBP, Hires Dr. McCabe

In December 2019, Dr. McCabe entered into an employment contract and confidentiality agreement with KBP USA.  (*See* Hellmann Decl., Ex. 1-A); *id.* Ex. 1-B (McCabe Confidentiality Agreement).)  Under the terms of his employment, any documents and information that Dr. McCabe obtained during his employment are proprietary and confidential and belong to KBP.[2]  *Id.*

Dr. McCabe acted as Chief Medical Officer for approximately 7 months, from March 2024 until October 2024.  While Novo pretends that Dr. McCabe's role was limited solely to Ocedurenone, that is false.  KBP's Chief Medical Officer has responsibility for strategy, oversight, planning and budgeting in connection with a variety of drugs in KBP's development pipeline.  (*See* Hellmann Decl. at ¶ 2.)

Consistent with the McCabe Confidentiality Agreement, upon leaving, Dr. McCabe surrendered access to all documents and other materials associated with his employment at KBP.[3]  (*See* Dkt. 21 at ¶ 6.)

## III.    Novo Acquires Ocedurenone and Agrees to Arbitrate All Disputes

In or about January 2023, Novo expressed interest in acquiring Ocedurenone.  Between February 2023 and October 2023, Novo conducted extensive due diligence.  (*See* Hellmann Decl. at ¶ 4.)  On October 11, 2023, KBP and Novo executed an Asset Purchase Agreement ("APA") pursuant to which Novo agreed to acquire Ocedurenone.  (*See* Hellmann Decl., Ex. 1-C.)

---

[2]    The definition of "Company Confidential Information" includes "any non-public information that relates to the actual or anticipated business or research and development of the Company . . . ." (Hellmann Decl., Ex. 1-B, § 2.)

[3]    The McCabe Confidentiality Agreement provides, in part: "following my leaving the employ of the Company, I will deliver to the Company . . .  any and all Company property, including but not limited to any Company Confidential Information, . . . Upon returning such documents to the Company, I agree that I will then permanently delete from my Devices and Media any and all such documents that contain Company Confidential Information . . ." (Hellmann Decl., Ex. 1-B, § 5.)

3

### A.    Asset Purchase Agreement

Under the APA, Novo agreed to acquire Ocedurenone from KBP for up to USD $1.3 billion.  Novo made an upfront payment of USD $800 million.  Under the APA, Novo is obligated to pay an additional USD $500 million in deferred payments and is required to use commercially reasonable efforts to develop Ocedurenone.  (*See id.* (APA § 1.1, at 4, 5, 13; APA § 2.7.)

### B.    Transition Services Agreement

The parties also executed the Transitions Services Agreement ("TSA") by which KBP agreed to provide certain transitional services to Novo to support the ongoing clinical trials for Ocedurenone and the transition of the business.  (*See* Hellmann Decl. at ¶ 5.)

### C.    Arbitration Agreements

Under both the APA and the TSA, the parties agreed to arbitrate any disputes.  Section 12.8(d) of the APA states, in part:

> (i)      Any unresolved Dispute . . . shall be finally resolved by binding arbitration by the International Chamber of Commerce ("ICC") administered in accordance with the Rules of ICC in effect as of the Closing Date . . . . The obligation to arbitrate under this Section 12.8(d) shall extend to any claims by or against the Parties and their respective Affiliates and any agents, principals, officers, directors, or employees of either of the Parties or their respective Affiliates.

> (ii)     The Dispute arbitration shall be conducted by three (3) arbitrators experienced in the business of pharmaceuticals. Within 30 days after initiation of arbitration, the Parties shall select the arbitrators. Buyer, on the one hand, shall select one arbitrator and Seller, on the other hand, shall select one arbitrator (or, if either Party fails to make a choice, the ICC shall select one arbitrator on behalf of such Party) and the two arbitrators selected by the Parties will mutually select a third arbitrator (or, if they fail to make or agree on a choice, the ICC shall select a third arbitrator). . . . The place of arbitration shall be New York City, New York, United States, and all proceedings and communications shall be in English.[4]

> (iii)    A Party that needs urgent interim or conservatory measures that cannot await the constitution of an arbitral tribunal may make an application for such measures pursuant to the ICC's Emergency Arbitrator Rules. . . .

---

[4]    Section 12.8(d) of the APA and Section 6.9(d) of the TSA are identical in all material respects.

(Hellmann Decl. Ex. 1-C (APA § 12.8(d).)

Under the arbitration rules chosen by the parties, the arbitral tribunal is authorized to "establish the facts of the case by all appropriate means." ICC Rules of Arbitration Article 25(1) (Jan. 1, 2021). Accordingly, it is the duty and prerogative of the arbitrators chosen by the parties to oversee the discovery that is permitted and admissible.

## IV.   Novo Unilaterally Terminates Development

Within months after it acquired Ocedurenone, Novo abruptly terminated the clinical trials for the compound. Apparently, it made this decision on the basis of an analysis done by a contract research organization that reviewed interim data regarding the efficacy of Ocedurenone and concluded that the trials were futile after only 12 out of a planned 56 weeks of data had been collected. (*See* Hellmann Decl. Ex. 1-F.) As a consequence of its premature termination, Novo recognized roughly USD $800 million capital impairment loss on its books. (*See id.*)

## V.   KBP and Novo Begin Arbitrating Their Disputes

On March 22, 2025, KBP filed a Request for Arbitration ("RFA") against Novo seeking specific performance of the transaction, alleging that Novo's unilateral decision to terminate Ocedurenone was commercially unreasonable and breached the APA. (*See* Hellmann Decl. at ¶ 9.)[5] KBP's RFA does not mention Dr. McCabe.

On March 27, 2025, Novo filed its own RFA, naming KBP and Dr. Huang Zhenhua ("Dr. Huang"), the founder and executive chairman of KBP, as respondents. Novo alleges that KBP fraudulently induced Novo to enter into the APA by knowingly misrepresenting or misleadingly omitting material information about the conduct and results of the Ocedurenone Phase 2 and Phase

---

[5]   On April 28, 2025, KBP sought Novo's agreement that the Court be furnished a copy of KBP's and Novo's Requests for Arbitration. Novo refused to agree. (*See* Hellmann Decl. at ¶ 12.) KBP thus has filed Novo's RFA under seal. Novo also refused to consent to such sealing. (*See id.*)

3 clinical studies, and that Dr. Huang participated in and aided and abetted KBP's purported fraud. Novo alleges that the fraud is related to anomalous and/or irregular results from a clinical trial site in Bulgaria. Novo seeks rescission or rescissory damages and, in the alternative, compensatory and punitive damages. (*See id.* at ¶ 10.) Novo does not name Dr. McCabe as a party in the RFA, nor does it make any allegations against him.

Both parties have nominated arbitrators. On April 8, 2025 KBP filed an application to consolidate the two arbitrations. Novo has agreed to consolidate both arbitrations, and takes the position that it should be considered the claimant in the combined proceeding. Once the ICC consolidates the arbitrations, the parties will have 30 days to agree on the arbitrator who will serve as chair of the tribunal. (*See* Hellmann Decl. at ¶¶ 9-11.)

## VI.  Novo Claims It Needs Discovery From This Court in Order to Oppose KBP's Then-Forthcoming Application to Set Aside the Freezing Orders[6]

### A.  Novo Files Section 1782 Petition and Serves Subpoenas[7]

Despite KBP's clear interest in the outcome of this proceeding, the power of the arbitrators to define the scope of discovery, and knowing that KBP is represented by counsel, on March 24, 2025—about the same time that Novo filed for arbitration—Novo filed an *ex parte* application in this Court under Section 1782. (Dkt. 1.) On April 2, 2025, this Court issued its Order and authorized Novo to serve two subpoenas (the "Subpoenas") on Dr. McCabe. (Dkt. 9 at 7-8.) However, this Court expressly stated:

---

[6]  On April 14, 2025, KBP initiated legal proceedings against Novo before the Danish Maritime and Commercial High Court and requested that the court issue a temporary injunction order with respect to the worldwide freezing order rendered in Singapore on February 14, 2025.

[7]  Novo also sought documents from and the deposition of Otsuka America Pharmaceutical, Inc. ("Otsuka"), *ex parte* in the U.S. District Court for the Northern District of California. Novo had to acknowledge KBP's valid interests by conceding to KBP's intervention. Otsuka had few documents and refused to be deposed, and Novo did not compel a deposition. (*See* Hellmann Decl. ¶ 8.)

> [T]he court's analysis of the above questions is ***inherently limited by the ex parte nature of the current proceedings***. Accordingly, . . . Dr. McCabe may make a ***motion to modify or quash the subpoenas or otherwise seek relief*** . . . .

(Dkt. 9 at 7 (emphasis added).)

On April 17, 2025, Novo served the Subpoenas on Dr. McCabe. Novo's document subpoena seeks six broad categories of documents from Dr. McCabe, which are directed to the same topics as Novo's RFA, including documents regarding "KBP's selection of the Bulgaria Site"; "Interim Analysis from the Phase 2 Study . . . and the Blinded Reviews from the Phase 3 Study . . ."; "KBP's oversight of the Phase 2 Study at the Bulgaria Site"; "Analyses conducted by KBP of the data or results from the Bulgaria Site in the Phase 2 Study"; communications with "actual or potential Transaction partners, including Otsuka and Novo, related to (i) the Bulgaria Site; (ii) the efficacy of Ocedurenone; and (iii) the conduct of the Phase 2 Study or the Phase 3 Study"; and "Dr. Huang['s] involvement in (i) the Phase 2 Study; (ii) the Phase 3 Study; (iii) the due diligence process with potential Transaction partners, including Otsuka; and (iv) the due diligence process with Novo." (Hellmann Decl. Ex. 1-L, at 5.)[8]

Importantly, and contrary to Novo's portrayal otherwise, the second subpoena, Novo's deposition subpoena served on Dr. McCabe, is ***unbounded by any topics***. (*See id*.)

### B. KBP Moves to Intervene

By moving *ex parte* and thereby resisting KBP's involvement, Novo has made its effort to obtain discovery from Dr. McCabe more complicated, costly, and time-consuming. After counsel for KBP learned of this North Carolina proceeding through its own initiative, and from counsel for Dr. McCabe that he did not possess any documents, counsel for KBP invited Novo on April 1,

---

[8]    On April 30, 2025, Dr. McCabe provided an affidavit to Novo swearing that he has "no documents responsive to the Documents Subpoena[.]" (Dkt. 21 at ¶ 9.) KBP understands that while Dr. McCabe has no responsive documents, he recorded his objections to the document subpoena and reserved his rights. Because the Subpoenas are improperly founded, KBP respectfully requests that the Order fully be vacated and both Subpoenas quashed.

2025 to withdraw its Section 1782 application in order to save time, money, and judicial resources. (*See* Hellmann Decl., Ex. 1-I.)  Novo refused.  (*See* Hellmann Decl. at ¶ 14.)

As a consequence of Novo's refusal, KBP was forced to move to intervene.  (Dkt. 12.) KBP sought consent from both Dr. McCabe and Novo.  Dr. McCabe consented (*see* Hellmann Decl. at ¶ 15), but Novo declined on the excuse that it could not confirm that KBP's motion to intervene did not contain what Novo viewed as "unnecessary inflammatory statements[.]" (Hellmann Decl., Ex. 1-K.)

On April 28, 2025, counsel for KBP participated in a meet and confer with counsel for Dr. McCabe and counsel for Novo that Novo requested.  For the first time, Novo claimed that it had informed an individual at the Court (it is not clear to KBP whom) that it did not object to KBP's motion to intervene—stating that ***Novo had made that ex parte communication to the Court twice***. Novo had made no attempt to inform KBP of this supposed fact.  (*See* Hellmann Decl. at ¶ 17.)

On April 30, 2025, Dr. McCabe filed a motion to quash the deposition subpoena.  (Dkt. 20, 22.)  On May 5, 2025, Novo filed its opposition and stated, for the first time on the record, that it did not object to KBP's intervention in this case.  (Dkt. 23.)  On May 7, 2025, the Court granted KBP's motion to intervene.  (Dkt. 26.)

### C.    Novo Premises Its Section 1782 Discovery on the Purported Need to Oppose KBP's Then-Forthcoming Application by KBP to Set Aside Freezing Orders

Without the benefit of evidence or argument from KBP, ***six weeks prior*** to filing its Section 1782 petition, Novo obtained *ex parte* worldwide freezing orders to secure the award it anticipates receiving from the arbitrators.  On February 14, 2025, the Singapore International Commercial Court ("SICC") granted an order freezing $730 million of assets of KBP and Dr. Huang.  (*See* Bull Decl. at ¶¶ 6-7.)  As for the Cayman Islands, on February 17, 2025, the Grand Court of the Cayman Islands granted an order freezing assets in the amount of US $250,868,767 (comprising a loan of

8

US $244,000,000 plus interest of US $6,868,767) and such amount of the US $578,000,000 dividend payment as has been declared in favor of KBP's parent company (KBP Biosciences Holdings Limited). (*See* Olarou Decl. at ¶¶ 4-5.)

Novo told this Court that it needed discovery from Dr. McCabe so that it could oppose KBP's then-forthcoming application to set aside Novo's freezing orders. (Dkt. 2 at 6.)

### D. Novo Already Submitted its Opposition to KBP's Set-Aside, Nullifying its Claimed Justification for Discovery

KBP filed its application to set-aside the Singapore freezing order on March 25, 2025.[9] (*See* Bull Decl. at ¶ 8.) On April 25, 2025, Novo *filed its opposition to KBP's set-aside application*. (Bull Decl. at ¶ 10.) This means that *Novo already has made its case as to why its freezing order should remain in effect*, nullifying Novo's claimed justification for discovery.

The opposition that Novo filed is breathtaking in its scope. It consists of almost *6000 pages* of material, including 220 exhibits. It includes eight affidavits, covering, among other things, drug valuation; forensic accounting; clinical trial due diligence and regulation; Cayman Islands law, New York law; and international commercial arbitral law. (*See* Bull Decl. at ¶ 11.) Novo has not asked the SICC to defer the hearing of the set-aside application until discovery is obtained from Dr. McCabe. (*See* Bull Decl. at ¶ 10.)

Having already filed its comprehensive opposition to KBP's set-aside application on April 25, Novo will not be permitted to submit additional evidence without permission from the SICC, which will not permit it unless "clearly necessary and in the interests of justice." (Bull Decl. at ¶ 12.) On May 9, 2025, the Singapore Court directed that the hearing date shall be **May 23, 2025**,

---

[9] Given the relationship between the actions, the return date in the Cayman Islands case will be listed after the SICC rules on KBP's set-aside application. (*See* Olarou Decl. at ¶ 7.)

and that the parties must file their written submissions by **May 15, 2025**. (*Id*. at ¶ 14.)[10] The

parties' May 15 submissions and the May 23 hearing are required to be on the basis of ***existing***

***evidence***. (*See* Bull Decl. at ¶ 13.)

**ARGUMENT**

I. **NOVO'S SECTION 1782 APPLICATION SHOULD BE VACATED BECAUSE IT IS INCONSISTENT WITH THE STATUTORY AIMS OF SECTION 1782, DISCRETIONARY FACTORS, AND SUPREME COURT PRECEDENT**

    A. **Applicable Legal Standards**

It is well established in the Fourth Circuit that a district court has ***wide discretion*** to deny

discovery that is sought under 28 U.S.C. § 1782(a). "In *Intel*, the Supreme Court held that 'a

district court is not required to grant a § 1782(a) discovery application simply because it has the

[statutory] authority to do so.' The provision's language that a district court 'may order' discovery

indicates that any decision is left to the court's discretion." *In re Eli Lilly & Co.*, 37 F.4th 160,

167-168 (4th Cir. 2022). Importantly, "*Intel* does not mandate that every factor support a court's

exercise of discretion or that all factors need even be considered. Rather, it provided the factors to

illuminate considerations relevant to the decision of whether to authorize assistance for use in

proceedings before a foreign tribunal." *Id.* at 168 (affirming vacatur and quashing of discovery

order because discovery was "an attempt to circumvent foreign discovery procedures").

A court's exercise of discretion "should be guided by the statute's twin aims of providing

efficient means of assistance to participants in international litigation in our federal courts and

encouraging foreign countries by example to provide similar means of assistance to our courts."

---

[10]    On May 8, 2025, KBP advised the Court that "[t]he parties have submitted correspondence to the Singapore Court to reschedule the May 9 submissions deadline and May 23 hearing date cited by Novo in its motion to expedite . . . While the Singapore court has not yet ruled on the rescheduling of those dates, given the unprecedented volume of Novo's filing, KBP is confident the court will adjourn the hearing date." (Dkt. 27 at 3.) The next day, the SICC issued a ruling moving the May 9 date to May 15, but keeping the hearing date of May 23. (*See* Hellmann Decl. at ¶ 18.) Mr. Bull's declaration discusses this further. (*See* Bull Decl. at ¶ 13.)

10

*Al Fayed v. United States*, 210 F.3d 421, 424-25 (4th Cir. 2000) ("The statute explicitly commits to the district court's discretion the determination of whether to grant a request for assistance in a foreign tribunal.").

In addition, the United States Supreme Court has identified factors informing a court's discretion concerning a Section 1782 application, including (1) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (2) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (3) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264–65 ("We caution, however, that §1782(a) authorizes, but does not require, a federal district court to provide judicial assistance to a foreign or international tribunals or to 'interested person[s]' in proceedings abroad.").

As discussed further below, these considerations countenance in favor of vacating the Section 1782 application and quashing the Subpoenas.

### B.     The Worldwide Freezing Orders Are Without a U.S. Equivalent

The freezing orders that Novo obtained *ex parte* are known as "*Mareva*" injunctions. Developed by an English judge in 1975, these orders are often called a "nuclear weapon of the law" because "a defendant literally wakes up one morning and finds that everything he owns has been 'frozen' by an English court [or that of a British dependency/colony], his confidential fiduciaries have made public his private finances, and he has been placed on an allowance—not unlike that of a child—to pay for his living, business, and legal expenses." *Three If By Equity: Mareva Orders & The New British Invasion*, 19 St. John's J. Legal Comment. 673 (2005); *see also Grupo Mexicano De Desarrollo v. Alliance Bond Fund*, 527 U.S. 308, 329 (1999) (it is the "nuclear weapon of the law") (quoting R. Ough & W. Flenley, The Mareva Injunction and Anton Piller

11

Order: Practice and Precedents xi (2d ed. 1993)).  Remarkably, the orders can have worldwide effect—as they do here.  *Mareva* injunctions have no equivalent in the United States: U.S. courts have no power to issue them because they are a remedy that was "historically unavailable from a court of equity". *Grupo Mexicano De Desarrollo*, 527 U.S. at 332.

Given the unique nature of *Mareva* orders, discovery from Dr. McCabe will not "encourag[e] foreign countries by example to provide similar means of assistance to our courts" as Congress intended Section 1782 discovery to do.  *Al Fayed*, 210 F.3d at 424.  Besides the fact that there can be no reciprocal *Mareva* circumstances in the United States, as discussed further below, discovery here—which would not assist the foreign court, would be a burden on a non-party, and would contravene U.S. Supreme Court precedent—would not set an example for other countries to emulate.

### C.  Any Discovery Would Not Assist the Courts That Already Have Issued the Freezing Orders

1.  Novo Already Has Filed Its Opposition to KBP's Application to Set Aside the Singapore Freezing Order, Nullifying Novo's Justification for Discovery

Novo represented to this Court that it needs discovery from Dr. McCabe in order to oppose KBP's then-forthcoming application to set aside Novo's *ex parte* worldwide freezing orders.  (Dkt. 2 at 6.)  KBP already filed its set-aside application before the SICC on March 25, 2025.  On April 25, 2025, Novo filed its opposition (which, notably, included eight affidavits and hundreds of exhibits).  Novo's claimed justification for discovery thus is moot. *See In re Eli Lilly*, 37 F.4th at 168 (development in foreign court proceedings after parties' briefing confirm discretionary decision to decline Section 1782 discovery).

Importantly, Novo did not ask the SICC to defer the (May 23) hearing of the set-aside application until discovery is obtained from Dr. McCabe.  (*See* Bull Decl. ¶ 10.)  It is not the case,

12

therefore, that Novo's opposition turns on the discovery it seeks from Dr. McCabe or that the court deciding that motion is anticipating it.

Having already filed its opposition to KBP's set-aside in Singapore, Novo will not be permitted to submit additional affidavits without the permission of the court. (*See* Bull Decl. at ¶ 12.) Thus, it is not the case that Novo is free to submit any discovery from Dr. McCabe at will. Rather, the court will permit additional affidavits only if they are "clearly necessary and in the interests of justice." (*Id.* at ¶ 12.) Here, the factors the court will take into account (*see* Bull Decl. at ¶ 12) counsel against allowing Novo to submit additional affidavits: (a) Novo waited until well after it obtained its worldwide freezing order from the court to seek discovery from Dr. McCabe; (b) Novo already submitted affidavits to the court on all manner of topics, including whether it has a "good arguable case" against KBP (*see* (Bull Decl. at ¶ 15); and (c) because Dr. McCabe has no documents, any affidavits Novo would seek to submit would not attach documentary evidence.[11]

This Court should not be tempted to minimize the fact that Novo's claimed justification for discovery is moot, on the basis that Novo recently asked this Court to expedite its decision on Dr. McCabe's motion to quash. Novo alone has been in control of the timing of its actions, and thus cannot seek to blame any party other than itself for the fact that its claimed justification for discovery is no longer operative. *See In re Elliott Assocs. L.P.,* 2022 WL 1159692, at *4 (W.D.N.C. Apr. 19, 2022) ("[T]he second *Intel* factor weighs against the eleventh-hour request"). In this respect, Novo filed its applications for worldwide freezing orders on February 10 and 13, 2025. Novo did not apply to this Court for discovery then, even though it could have done so,[12]

---

[11] For these same reasons, the discovery sought by Novo will not be "for use" in Singapore within the meaning of Section 1782.

[12] Novo could have filed this request even before seeking its freezing orders in Singapore and the Cayman Islands, *see Pereira v. Nucor Corp.*, 2023 WL 4143229, at *3 (W.D.N.C. June 22, 2023) ("There is no requirement that
*(cont'd)*

presumably because it did not want to reveal to KBP that it had applied *ex parte* for worldwide freezing orders. Even once Novo obtained the freezing orders on February 14 and 17, 2025, it still did not file its petition with this Court for discovery until well over a month later, only on March 24, 2025. And even then, Novo made the strategic choice to file its application on an *ex parte* basis, and then refused to consent to intervention, causing further delay.

        2.     The Courts That Already Have Issued Freezing Orders Now Will Focus on the Dissipation of Assets—of Which Dr. McCabe Is Not Alleged to Have Knowledge—and the *Mareva* Standard Renders Any Other Discovery <u>Immaterial</u>

Even if Novo were permitted to submit additional evidence in Singapore, Dr. McCabe is not alleged to have evidence on which that court will focus for purposes of deciding KBP's set-aside application.

The requirements for obtaining a *Mareva* order are broadly the same in Singapore and the Cayman Islands: (a) a "good arguable case" on the merits of the claims underlying the application (or a "serious issue to be tried"); (b) a real risk that the respondent will dissipate its assets to frustrate a judgment or arbitral award issued on the underlying claims; and (c) the presence/insufficiency of assets in the jurisdiction. (*See* Bull Decl. at ¶ 15 (Singapore); Olarou Decl. at ¶ 11 (Cayman Islands).)

In Novo's case, the inquiry is more circumscribed in the Cayman Islands. This is because Novo sought and obtained a *Mareva* order there on a "*Chabra*" basis: because the target in that action (KBP Biosciences Holdings Limited) is not a party to the underlying arbitral dispute, the Cayman Islands court did not consider whether there was a "good arguable case" or a "serious

---

the proceedings be imminent."), but made the strategic choice not to, presumably so that it could proceed in secret in those jurisdictions.

issue to be tried" against that party when it ordered a worldwide freezing order. (*See* Olarou Decl. at ¶¶ 17-18.)

Having already issued the freezing orders, the courts assessing whether to set aside those orders will focus on whether there is a risk of dissipation of assets, because such inquiry "lies at the heart of the court's jurisdiction to grant Mareva Injunctions[.]" (Bull Decl. at ¶ 16; *see also* Olarou Decl. at ¶ 19.) This is because such inquiry "is a jurisdictional fact that enlivens the court's power to enjoin such dissipation."[13] (Bull Decl. at ¶ 16.)

Dr. McCabe left KBP's employment on October 31, 2024, and thus he has no reason to know anything about KBP's or Dr. Huang's present usage or location of assets. (*See* Hellmann Decl. ¶ 2.) Novo does not claim otherwise. Indeed, Novo does not allege that Dr. McCabe has such knowledge. (*See generally* Dkt. 2.) Nor does Novo's foreign counsel claim that the risk of dissipation is the reason Novo seeks discovery from Dr. McCabe. The contrary is true: both counsel told this court that Dr. McCabe has information that is supposedly relevant to whether Novo has a "good arguable case"/"serious issue to be tried". In this respect, Novo's Cayman Islands counsel, Katharine Pearson, explained that

> Dr. McCabe likely possesses information ***relevant to whether there is a 'serious issue to be tried'*** that KBP and Dr. Huang fraudulently induced Novo to acquire the rights to Ocedurenone, which . . . is one of the bases on which Novo has obtained a worldwide freezing order in the ongoing Cayman Court Proceeding.

(Dkt. 1-5 (Pearson Decl.) ¶ 13 (emphasis added).) Novo's Singaporean counsel, Danny Ong, echoed the same. (Dkt. 1-1 (Ong Decl.) ¶ 12.)[14]

---

[13] The focus on dissipation is likely familiar to this Court. Even though not as extraordinary as a *Mareva* injunction, a U.S. court considering a freezing order requires a "reason to believe that, absent the freeze order, the assets would be depleted or otherwise become unavailable." *Kemp v. Peterson*, 940 F.2d 110, 114 (4th Cir. 1991).

[14] Such discovery plainly is focused on Novo's claims in its arbitration, namely that KBP fraudulently induced Novo into entering the APA by knowingly misrepresenting or misleadingly omitting material information about the
*(cont'd)*

Thus, "[e]ven if the testimony of Dr. McCabe could be relevant to the requirement of a 'good arguable case on the merits,' it would not be material, or even relevant, to the requirement of a 'real risk of dissipation of assets' by the Defendants." (Bull Decl. ¶ 19; s*ee also* Olarou Decl. ¶ 22(b) ("it is not clear . . . how Dr. McCabe can possibly be expected to support any case that KBP Singapore and/or Dr. Huang '*dissipated the purchase price*' to KBP Cayman.").)

On top of the fact that the foreign courts' focus will be on the risk of dissipation, any other discovery from Dr. McCabe would be immaterial. The bar for Novo to show a "good arguable case" / serious issue to be tried is a "low bar" that the courts found in February was met without discovery from Dr. McCabe. (*See* Bull Decl. ¶ 17; Olarou Decl. ¶ 21.) The reason for this standard is because, in the *Mareva* context, courts are careful not to undertake a trial on the merits. (*See* Bull Decl. ¶ 17; Olarou Decl. ¶ 14.) In any event, Novo did not ask the SICC to defer the hearing until it obtained discovery from Dr. McCabe[15] (*see* Bull Decl. at ¶ 10), so it is not as if the evidence is needed or is awaited by that court.[16]

3.    Any Deposition May Not Be Admissible or Will Be Accorded
      Little to No Weight

Novo insists on proceeding with discovery from Dr. McCabe even though he has no requested documents in his possession, custody or control. But if Novo were to take Dr. McCabe's

---

conduct and results of the Ocedurenone Phase 2 and Phase 3 clinical studies and that Dr. Huang participated in and aided and abetted KBP's purported fraud. (*See* Hellmann Decl., Ex. 1-G (Novo's Request for Arbitration).)

[15]    It cannot be the case in the Cayman Islands, given that the court did not and will not assess whether there is a "serious issue to be tried" as concerns KBP Biosciences Holdings Limited. (*See* Olarou Decl. ¶ 22.)

[16]    Indeed, before this Court, Novo seeks to expedite matters by pretending that the May 23 hearing presents urgency to depose Dr. McCabe. Yet, as noted, Novo's March 25 submission does not seek to defer that hearing to allow it to get evidence from Dr. McCabe. Further, following Novo's massive March 25 submission, KBP asked the SICC for permission to submit additional evidence to respond and Novo opposed allowing KBP to do so. (*See* Hellmann Decl. ¶ 18.) In circumstances where Novo has opposed allowing KBP to submit additional evidence, it would be inequitable for this Court to facilitate discovery from Dr. McCabe for Novo to submit to the SICC (and it would not serve Section 1782's aim of comity).

16

deposition and attempt to submit the transcript of such deposition to the foreign courts, such transcript will be accorded little to no weight under those courts' rules.

The SICC will not admit Dr. McCabe's deposition transcript, should he sit for a deposition, or likely will accord little or no weight to it. (*See* Bull Decl. at ¶ 20.) Unless Dr. McCabe himself attests in an affidavit to exhibit his deposition transcript and confirms in the affidavit the truth of the contents stated in the deposition transcript, his deposition transcript is arguably inadmissible in the SICC as hearsay. (*See* Bull Decl. at ¶¶ 20-34.) Even if it could be admissible under the hearsay exception that the SICC action is an "interlocutory proceeding", it is likely that the Singapore Court will accord little to no weight to Dr. McCabe's deposition. (*See* Bull Decl. at ¶¶ 31-34.)

The situation is similar in the Cayman Islands. "The transcript of Dr. McCabe's evidence obtained via the subpoena will not have the status of affidavit evidence or of a deposition in the Cayman Proceedings. At its highest, it will simply be a documentary exhibit to an affidavit of some third person (not Dr. McCabe)." (Olarou Decl. ¶ 23.) Even then, "it will not have the same weight as a sworn affidavit or even a deposition." (*Id.* at ¶ 26.) This is on top of the fact that, because Novo obtained its freezing order in the Cayman Islands on a *Chabra* basis, the only evidence that is relevant in that proceeding as regards KBP Biosciences Holdings Limited is about the dissipation of assets—and Novo does not allege that Dr. McCabe has any such knowledge.

### D.    Novo's Subpoenas Are an Improper Fishing Expedition That Seek to Sidestep the Supreme Court's Prohibition on Using Section 1782 for Private Foreign Arbitration

As noted above, "[a] district court's exercise of discretion is guided by four non-exclusive factors that the Supreme Court articulated in [*Intel*]." *In re Elliott Assocs. L.P.*, 2022 WL 1159692, at *2 (vacating *ex parte* Section 1782 discovery for use in German proceedings). As one of the *Intel* factors, the district court considers "whether the § 1782(a) request conceals an attempt to

circumvent foreign proof-gathering limits or *other policies of* a foreign country or *the United States*." *Intel*, 542 U.S. at 244–45 (emphasis added).

Courts have broad discretion to determine whether a Section 1782 petition is being requested for a lawful purpose or whether it is a pretext for other uses. Even where the statutory prerequisites of § 1782(a) are met, "Section 1782 affords the district courts wide discretion in responding to requests for assistance in proceedings before foreign tribunals." *Al Fayed*, 210 F.3d at 424 (4th Cir. 2000) (denying Section 1782 discovery for claimed use in French magistrate judge's case investigating car crash because it was an "attempt to make an end run" around the Freedom of Information Act).

For years, it was an open question whether a private foreign arbitration qualified under Section 1782 as "a proceeding in a foreign or international tribunal". Two years ago, the United States Supreme Court definitively, and unanimously, answered that question in the negative. *See ZF Auto.*, 596 U.S. at 625 (prohibiting "an attempted end run around § 1782's limit [on discovery used for private foreign arbitration]"); *see also Pereira,* 2023 WL 4143229, at *3 ("The Supreme Court recently held that Section 1782 does not apply to private foreign arbitration.").

In reaching that conclusion, the Supreme Court stated that "the animating purpose of § 1782 is comity: Permitting federal courts to assist foreign and international governmental bodies promotes respect for foreign governments and encourages reciprocal assistance . . . Why would Congress lend the resources of district courts to aid purely private bodies adjudicating purely private disputes abroad?" *ZF Auto.*, 596 U.S. at 632.

Here, pursuant to Section 12.8(d) of the APA (and 6.9(d) of the TSA), Novo and KBP chose ICC arbitration, through a 3-arbitrator panel, seated in New York (therefore not even a "foreign" tribunal), as the exclusive forum to hear and decide their disputes. *See supra* at 3-5.

18

Both Novo and KBP brought an arbitration pursuant to their arbitration agreement. Novo has agreed with KBP to consolidate the arbitrations, although Novo would like to be designated as the claimant. (*See* Hellmann Decl. ¶ 11.) Either way, there is no dispute that Novo intends to pursue its claims to the fullest through the arbitration process seated in New York.

The true use for the discovery Novo seeks has always been its arbitration against KBP, and the current circumstances confirm Novo's claimed justification to be a pretext: (i) as discussed above, Novo already has filed its opposition in the foreign courts, nullifying Novo's purported justification for discovery; (ii) the discovery sought will not have the claimed relevance, weight or admissibility in the courts presiding over the freezing orders; and (iii) as discussed below, Novo's deposition subpoena is unbounded by any topics and purports to allow Novo to trawl through any topic it desires in advance of the arbitration disclosure process. Such gambit should be denied.

The documents sought by Novo here (*supra* at 7) correspond precisely to Novo's claims in arbitration against KBP and Dr. Huang. *See In re Eli Lilly*, 37 F.4th at 168 ("And the categories of documents [requested in foreign proceeding] appear to overlap significantly with those requested by [applicant] in its § 1782 application."). For example, Novo alleges in its RFA:

> Rather than providing "all material information" concerning the safety and efficacy of Ocedurenone as represented in the APA, the Respondents instead knowingly concealed numerous highly material facts to induce Novo to acquire Ocedurenone, including—among other things—that the purportedly favorable results of the Phase 2 Study were driven by a single clinical trial site in Bulgaria, which showed a treatment effect not observed at any other site around the world and at which there were numerous irregularities and violations of Good Clinical Practice ("GCP"), calling into question the validity of the data generated at the site. While concealing these—and other highly material facts regarding Ocedurenone's efficacy—the Respondents misleadingly represented to Novo that Ocedurenone was highly effective at lowering patients' blood pressure across subgroups, including geographical region.

(*See* Hellmann Decl. Ex. 1-G, Novo's Request for Arbitration, at ¶¶ 6.)

Novo's insistence on the deposition of Dr. McCabe at this time (particularly in the absence of any documents) is an attempt to obtain evidence for its arbitration claims in a manner not contemplated under the parties' arbitration agreement or the ICC Rules chosen therein, which provide for discovery only <u>after</u> the arbitral tribunal has been formed[17] and generally in written (and not oral) form. *See* Gary B. Born, *Chapter 16: Disclosure in International Arbitration in International Commercial Arbitration* (3d. ed. 2021), Section (E)(3)(e) ("In international arbitration . . . depositions are much less frequent and are used only rarely. Absent [voluntary agreement for reciprocal depositions], the likelihood that an international tribunal will order a deposition, over one party's objection, is presently limited."). Section 1782 does not condone a litigant's attempt to skirt the proof-gathering rules of the very forum it chose. *See Pereira*, 2023 WL 4143229, at *5 (denying 1782 where applicant "seeks early discovery that he cannot seek under Brazilian law" and "[i]t appears that Applicant may be trying to do an end run around proof-gathering restrictions").

Novo's opposition to Dr. McCabe's motion to quash notably acknowledges the "possibility" that it will use the discovery it seeks from Dr. McCabe in arbitration, but claims that it is allowed to do so because it also invoked a foreign court proceeding, namely the *Mareva* actions. (Dkt. 23 at 4-6.) But the cases Novo cites do not permit Section 1782 discovery where the claimed justification has been nullified (as is the case here) or is otherwise of no assistance. One of the only two post-*ZF Auto.* cases Novo cites does not even consider the issue of whether a party can use Section 1782 for both arbitration and non-arbitration purposes (*In re Pub. Joint-Stock Co. Bank Okritie Fin. Corp.*, 2023 WL 4928227, at *3 (S.D.N.Y. Aug. 2, 2023)), and the

---

[17] The arbitral tribunal has broad authority under the ICC Rules to determine and direct the discovery process for the arbitration. *See* Article 25(1) (authorizing the arbitral tribunal to "establish the facts of the case by all appropriate means.") Depositions are not a standard feature of international arbitration. *See* Born, at 2529.

other is a Second Circuit (not Fourth Circuit) case in which that court repeatedly states it is bound by its own (pre-*ZF Auto.*) precedent, while noting a district court's wide discretion to decline discovery in such circumstances and/or require use restrictions (*In re B&C Kb Holding GmbH*, 2024 WL 3170983, at *3 (2d Cir. June 26, 2024)).

Further, this Court's exercise of its discretion should be informed by the "clear intent" of Congress in setting U.S. policy. It is the policy set by Congress as enacted in the Federal Arbitration Act, 9 U. S. C. § 3 & 4, "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). Here, Novo asks this Court to do exactly the opposite—to facilitate Novo's multi-country effort to violate its obligation to arbitrate all issues, including not only conservatory relief, but, incontestably, the discovery that the arbitrators will determine is relevant to the parties' disputes. In doing so, Novo violates the spirit and the directive of the Supreme Court that Section 1782 is not available to obtain U.S. court-mandated discovery in aid of private foreign arbitration.

### E.    The Deposition Subpoena Places an Undue and Intrusive Burden on Dr. McCabe, Who is Not a Party to the Foreign Proceedings

The deposition subpoena served on Dr. McCabe is unbounded by any topic. By itself, this is an undue and intrusive burden, especially on a non-party. *See Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 455 (E.D.N.C. 2005) (subpoena "quashed for being facially overbroad and unduly burdensome."). The Fourth Circuit has established that a burden arises "when a subpoena is overbroad—that is, when it seeks information beyond what the requesting party reasonably requires" and has emphasized that a "nonparty should not have to do the work of tailoring a subpoena to what the requesting party needs; the requesting party should have done that before serving it." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 190 (4th Cir. 2019).

Dr. McCabe has advised the Court of the difficulty posed by a limitless subpoena. (*See* Dkt. 22 at 3 ("Dr. McCabe has no access to KBP documents and therefore no meaningful way to prepare for deposition concerning a clinical study that spanned several years."))

Further, because he is a non-party and has no documents, any deposition of Dr. McCabe would amount to an exercise in surprise. (*See* Dkt. 22 at 3 ("Of course, because the contemplated deposition is not a Rule 30(b)(6) corporate representative deposition, Dr. McCabe is left to perform guesswork, in part based on the document subpoena, as to what Novo intends to elicit in the way of testimony.")). Not only would this be unfair to Dr. McCabe, such "deposition by ambush" would be of questionable value and undermine its admissibility in Singapore and the Cayman Islands and/or the weight accorded to it. (*See* Bull Decl. at ¶¶ 21-35.)[18]

In addition, under the terms of Dr. McCabe's confidentiality agreement, all information he learned in the course of his employment is confidential. Being questioned about any topic thus puts Dr. McCabe at risk of breaching his confidentiality agreement. *See Virginia Dep't of Corr.*, 921 F.3d at 193 ("In particular, extremely potent confidential information may be of such a nature that it would be humanly impossible to control its inadvertent disclosure.") (internal quotation marks omitted).

The confidentiality concerns are heightened by the fact that Novo operates in the same industry as KBP and Dr. McCabe's role was not limited to Ocedurenone and instead covered other drugs and all manner of KBP's policies and procedures (*supra* at 3). *See Snoznik v. Jeld-Wen, Inc.*, 259 F.R.D. 217, 224 (W.D.N.C. 2009) ("The likelihood of harm is increased if a person's trade secrets were disclosed in litigation to competitors."). Novo cannot seriously contend that

---

[18] "§ 1782 discovery should be denied where an applicant 'can [ ] obtain the information from other sources [ ] without imposing a burden' on a non-party to the foreign action." *In re Elliott Assocs. L.P.*, 2022 WL 1159692, at *4. Novo has the opportunity to seek discovery at the appropriate time in the arbitration.

because it acquired records relating to Ocedurenone as part of its acquisition of that drug (which it now claims is void), KBP has no protectable interest in the reams of Company Confidential Information that Dr. McCabe acquired during his tenure—both about Ocedurenone and other matters.  (Dkt. 23 at 7-8.)

## II.      THE SUBPOENAS SHOULD BE QUASHED UNDER FRCP RULE 45

Once a Section 1782 subpoena issues, the manner in which discovery proceeds is governed by the FRCP's discovery rules.  Under "the overlapping and interrelated provisions of Rules 26 and 45 of the Federal Rules of Civil Procedure," *Insulate Am. v. Masco Corp.*, 227 F.R.D. 427, 432 (W.D.N.C. 2005), a trial court should consider "the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Schaaf*, 233 F.R.D. at 453.

### A.      FRCP 45(d)(3)(A)(iv)

FRCP 45(d)(3)(A)(iv) provides that a court "must quash or modify a subpoena that . . . subjects a person to undue burden."  A subpoena subjects a nonparty to undue burden if it "seeks information irrelevant to the case or that would require [the] non-party to incur excessive expenditure of time or money." *Cook v. Howard*, 484 F. App'x 805, 812 n.7 (4th Cir. 2012) (*per curiam*).  "And even if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome or where the potential harm caused by production outweighs the benefit." *Snoznik*, 259 F.R.D. at 222.  "[T]he ultimate question is whether the benefits of discovery to the requesting party outweigh the burdens on the recipient . . . But courts must give the recipient's nonparty status special weight, leading to an even more demanding and sensitive inquiry than the one governing discovery generally." *Virginia Dep't of Corr.*, 921 F.3d at 189 (citations omitted).

23

As discussed above, there is no need for discovery from Dr. McCabe in the *Mareva* proceedings and even if provided it may not be admissible and given little to no weight. Any information that Dr. McCabe has concerning KBP is confidential to KBP, and Novo may seek it through its arbitration against KBP. Under these circumstances, requiring Dr. McCabe to sit for a deposition is unnecessary, highly prejudicial, and burdensome on him as a non-party to the *Mareva* proceedings and the arbitrations.

## B. FRCP 45(d)(3)(A)(iii) and 45(d)(3)(B)(i)

Under FRCP 45(d)(3)(A)(iii), a subpoena may be quashed if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies." FRCP 45(d)(3)(B)(i) provides that a court may quash a subpoena "[t]o protect a person subject to or affected by a subpoena . . . if it requires . . . disclosing a trade secret or other confidential research, development, or commercial information." Courts considering the latter balance standards of relevance, need, confidentiality and harm. *Insulate Am.*, 227 F.R.D. at 432. Even where the information sought is relevant, courts do not allow discovery "where the potential harm caused by production outweighs the benefit." *Id.*

Under the Confidentiality Agreement, the documents and information that Novo seeks belong to KBP, not Dr. McCabe. (*See* Hellmann Decl., Ex. 1-B.) Here, the broad discovery requests and unbounded deposition subpoena seek confidential commercial information protected under Rule 45 and the subpoenas should be quashed. *See In re Blue Oil Trading Ltd.*, 2009 WL 3247854, at *2 (W.D.N.C. Oct. 5, 2009).

## CONCLUSION

For the foregoing reasons, the Motion should be granted in all respects.

24

DATED: May 13, 2025

/s/ James P. McLoughlin, Jr.
James P. McLoughlin, Jr.
N.C. Bar No. 13795
Josh Lanning
N.C. Bar No. 38858
Rashaad Hamilton
N.C. Bar No. 58275
Moore & Van Allen PLLC
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202
Telephone: (704) 331-1054
Facsimile: (704) 331-1159
jimmcloughlin@mvalaw.com
*Local Civil Rule 83.1(d) Attorneys*

Elizabeth A. Hellmann (admitted via *special appearance*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, N.Y. 10001-8602
Telephone: (212) 735-3000
betsy.hellmann@skadden.com

*Attorneys for Intervenor KBP Biosciences Pte. Ltd.*

## CERTIFICATE OF WORD COUNT

I hereby certify, that on the 13th day of May 2025, in accordance with Local Rule 7.2(f)(3), this memorandum complies with the applicable word count limit, as the headings, footnotes, citations and quotations amount to 8,304 words.

/s/ James P. McLoughlin, Jr.
James P. McLoughlin, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2025, I electronically filed the foregoing **KBP BIOSCIENCES PTE. LTD.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO VACATE THE ORDER GRANTING 28 U.S.C. SECTION 1782 APPLICATION AND QUASH THE SUBPOENAS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Kelly Margolis Dagger
N.C. Bar No. 44329
ELLIS & WINTERS LLP
Post Office Box 33550
Raleigh, North Carolina 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010
kelly.dagger@elliswinters.com

Mark P. Gimbel (special appearance forthcoming)
David Z. Pinsky (special appearance forthcoming)
COVINGTON & BURLING LLP
The New York Times Building 620 Eighth Avenue
New York, New York 10018
Telephone: (919) 841-1000
Facsimile: (626) 441-9137
mgimbel@cov.com
dpinsky@cov.com

*Counsel for Applicant Novo Nordisk A/S*

Andrew K. McVey
MURCHISON, TAYLOR & GIBSON PLLC
1979 Eastwood Road, Suite 101
Wilmington, North Carolina 28403
Telephone: (910) 218-7241
Facsimile: (910) 763-6561
AMcvey@murchisontaylor.com

*Counsel for Dr. James McCabe*

Respectfully Submitted,

/s/ James P. McLoughlin, Jr.
James P. McLoughlin, Jr.
N.C. Bar No. 13795
Josh Lanning
N.C. Bar No. 38858
Rashaad Hamilton
N.C. Bar No. 58275
Moore & Van Allen PLLC
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202
Telephone: (704) 331-1054
Facsimile: (704) 331-1159
jimmcloughlin@mvalaw.com
*Local Civil Rule 83.1(d) Attorneys*


Elizabeth A. Hellmann (admitted via *special appearance*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, N.Y. 10001-8602
Telephone: (212) 735-3000
betsy.hellmann@skadden.com

*Attorneys for Intervenor KBP Biosciences Pte. Ltd.*

28