IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:25-MC-1-M-BM

| | |
|---|---|
| IN RE:<br><br>APPLICATION OF NOVO NORDISK A/S, FOR *EX PARTE* ORDER PERMITTING DISCOVERY FOR USE IN FOREIGN PROCEEDINGS | **ORDER** |

On April 2, 2025, the court granted the 28 U.S.C. § 1782 application [DE-1] ("§ 1782 application") of Novo Nordisk A/S ("Novo") and permitted Novo to request discovery from James McCabe, M.D. ("Dr. McCabe") in support of foreign proceedings pending in Singapore (the "Singapore proceedings") and the Cayman Islands (the "Cayman Island proceedings" and together with the Singapore proceedings, the "foreign proceedings"). [DE-9]. On May 7, 2025, the court granted KBP Biosciences Pte. Ltd.'s ("KBP") motion to intervene [DE-12] in the instant matter. [DE-26].

This matter is now before the court on: (i) the motion by Dr. McCabe to quash Novo's subpoenas [DE-20] ("Dr. McCabe's motion to quash"); (ii) the motion by KBP to vacate this court's April 2, 2025 order granting Novo's § 1782 application and to quash subpoenas [DE-30] ("motion to vacate"); (iii) KBP's unopposed motion to seal [DE-33] ("motion to seal") its proposed sealed exhibit [DE-32]; and (iv) KBP and Dr. McCabe's May 19, 2025 joint oral motion to limit the use of Dr. McCabe's deposition testimony.

Dr. McCabe's motion to quash was filed on April 30, 2025 [DE-20], together with an affidavit [DE-21] containing multiple exhibits [DE-21-1 to -5], as well as a supporting memorandum [DE-22]. On May 5, 2025, Novo filed a response in opposition to Dr. McCabe's motion to quash [DE-23], together with multiple exhibits [DE-23-1 to -5].

KBP filed its motion to vacate on May 13, 2025 [DE-30], supported by a memorandum [DE-31] with multiple exhibits [DE-31-1 to -28], including one proposed sealed exhibit filed separately [DE-32] (the "proposed sealed exhibit"). On May 17, 2025, Novo filed a response in opposition [DE-41], supported by two exhibits [DE-41-1 to -2].

KBP filed its motion to seal on May 13, 2025 [DE-33], together with its proposed sealed exhibit [DE-32], as well as a supporting memorandum [DE-34]. On May 17, 2025, Novo filed a response in support [DE-40] of the motion to seal, supported by one exhibit [DE-40-1].

The court held a telephonic hearing on the motions [DE-20, -30, -33] on May 19, 2025 ("May 19 hearing"). *See* [DE-39]. As discussed in greater detail below, Novo has represented that it seeks to use the deposition of Dr. McCabe, *inter alia*, in support of a hearing before the Singapore International Commercial Court ("SICC") that is scheduled to occur on May 23, 2025, in Singapore. Accordingly, considering the other deadlines in this case, the court made its ruling in open court during the May 19 hearing, in order to maximize the parties' ability to respond to and implement the court's order prior to the May 23, 2025 hearing in Singapore. This order memorializes the court's oral ruling during the May 19 hearing.[1] For the reasons stated herein, as well as on the record at the May 19 hearing,[2] Dr. McCabe's motion to quash [DE-20] is DENIED; KBP's motion to vacate [DE-30] is DENIED; KBP's motion to seal [DE-33] is GRANTED, in each case, subject to the details provided herein.

At the conclusion of the May 19 hearing, following the court's ruling on Dr. McCabe's

---

[1] The May 19 hearing commenced at 10:00 a.m. and, following arguments on the motions by each party, the undersigned recessed the hearing in order to consider the arguments made, and to take up the court's previously scheduled criminal docket. The court resumed and concluded the hearing later that afternoon, ruling on all motions in open court, except for the joint oral motion which is ruled upon herein.

[2] To the extent not expressly included in this order, the court further incorporates by reference its oral findings of fact and conclusions of law from the hearing.

2

motion to quash and KBP's motion to vacate, KBP and Dr. McCabe made a joint oral motion to limit the use of Dr. McCabe's deposition testimony. Novo opposed the oral motion. The court took the motion under advisement, and informed the parties that the motion would be addressed in the instant written order. For the reasons provided below, KBP and Dr. McCabe's May 19, 2025 joint oral motion to limit the use of Dr. McCabe's deposition testimony is DENIED WITHOUT PREJUDICE.

## I. RELEVANT BACKGROUND

Novo is a pharmaceutical company headquartered in Bagsværd, Denmark. [DE-1-1] at ¶2; [DE-2] at 2. KBP Biosciences Pte. Ltd. ("KBP") is a biopharmaceutical company. [DE-13] at 2. Dr. McCabe was employed by KBP BioSciences USA Inc. ("KBA USA"), a wholly-owned subsidiary of KBP, from or about December of 2019 until October of 2024. *See id.* at 2-3; [DE-22] at 2.

On or about October 11, 2023,[3] Novo entered into an asset purchase agreement ("APA") with KBP, in which Novo acquired from KBP, *inter alia*, the rights to a drug known as Ocedurenone for approximately USD $1.3 billion, of which Novo made an upfront payment of USD $800 million. *See* [DE-31] at 4; [DE-2] at 2 (Novo alleging an "upfront purchase price of approximately $800 million."). Prior to the execution of the APA, KBP allegedly made certain representations to Novo related to the safety and efficacy of Ocedurenone in a Phase 2 study in treating patients with uncontrolled hypertension across subgroups, including geographical region. [DE-2] at 2-3. Novo alleges that after the APA was executed, it learned that the positive Phase 2 results were disproportionately related to anomalous results at a single clinical trial site in Bulgaria

---

[3] The court notes that Novo alleges the date which Novo and KBP entered into the APA as both October 20, 2023, (*see* [DE-9] at 1), and October 11, 2023 (*see* [DE-2] at 2). The undersigned notes the APA reflects "dated as of October 11, 2023." [DE-23-2].

3

that showed a treatment effect not observed at any of the 61 other sites in the study. *Id.* at 3. Novo further alleges that KBP was aware of the Bulgarian site's role in these anomalous results and shared information revealing this relationship with another potential buyer, though not with Novo. *Id.*

Based on these discoveries, Novo commenced legal action in Singapore on February 10, 2025, and in the Cayman Islands on February 14, 2025, seeking worldwide freezing orders against KBP and KBP Biosciences Holdings Limited ("KBP Cayman"), respectively. [DE-41] at 1-5. The worldwide freezing orders seek to prevent KBP from dissipating its assets to limit the enforcement of an award, if any, that Novo receives in an international arbitration case it intends to file. [DE-2] at 5. The Singapore and Cayman Islands courts (the "foreign tribunals") issued worldwide freezing orders on February 14, 2025, and February 17, 2025, respectively.[4] [DE-41] at 1-5. Novo anticipates that KBP Cayman will apply to set aside or vary the Cayman freezing order. [DE-41] at 5.

KBP alleges, however, that the contract research organization which allegedly identified the anomalous search results, later disclosed to both Novo and KBP that "it made a mistake," and that Novo unilaterally decided to terminate Ocedurenone. [DE-13] at 4. KBP further alleges that Novo is contractually "obligated to pay an additional [or the remainder of] USD $500 million in deferred payments and is required to use commercially reasonable efforts to develop Ocedurenone." [DE-31] at 4. On March 22, 2025, KBP filed a request for arbitration against Novo, seeking specific performance of the transaction, alleging that Novo's unilateral decision to terminate Ocedurenone was commercially unreasonable and breached the APA. *Id.* at 5. In

---

[4] The proceedings in the Cayman Islands are against KBP's parent company, KBP Cayman. *See* [DE-2] at 5.

4

response, Novo filed its own request for arbitration on March 27, 2025, naming KBP as a respondent. *Id.*

On March 25, 2025, KBP sought to set aside the freezing order (the "Set-Aside" application) issued by the Singapore court. [DE-41] at 3 (citing [DE-24-1] ¶ 4). On March 24, 2025, allegedly anticipating that KBP would seek to set aside or vary the Singapore freezing order, Novo, moving *ex parte*, sought an order pursuant to 28 U.S.C. § 1782(a) from this court permitting Novo to seek discovery from Dr. McCabe. [DE-41] at 2. Novo alleges that the evidence Novo seeks from Dr. McCabe "would support Novo's claims that it has a good arguable case of fraud against [KBP] and that there is a real risk that [they] will dissipate their assets." *Id.* at 2 (quoting [DE-1-1] at ¶ 16). On April 29, 2025, the Singapore court scheduled a hearing on the Set-Aside application for May 23, 2025. [DE-41] at 3; [DE-28-1].

Novo represents that Dr. McCabe resides within this district in Wilmington, North Carolina. [DE-2] at 3. Based on Dr. McCabe's LinkedIn page, KBP employed him from approximately August 2019 to November 2024, with his final role being that of Chief Medical Officer. *See* [DE-1-9]. Novo alleges that "Dr. McCabe oversaw the clinical trial sites, including the Bulgaria site, and participated in meetings for the trial." [DE-2] at 4. In June 2020, Dr. McCabe allegedly sent a letter raising data integrity and data entry concerns related to the conduct of the trials at the Bulgaria site. *Id.* Novo notes that KBP never shared these concerns with Novo. *Id.* Dr. McCabe asserts that, in connection with his employment with KBP, he executed a Proprietary Information and Inventions Assignment Agreement (the "confidentiality agreement'). [DE-22] at 2.

On April 2, 2025, this court issued its order authorizing Novo to serve two subpoenas on Dr. McCabe. [DE-9] at 7-8. On April 17, 2025, Novo served the two subpoenas on Dr. McCabe.

5

[DE-31] at 7.  The first subpoena seeks six categories of documents directed to the same topics as Novo's request for arbitration, while the second subpoena, a deposition subpoena, does not list any topics.  *See* [DE-1-11; -12].  On April 30, 2025, Dr. McCabe, by and through counsel, filed a motion to quash the deposition subpoena.  [DE-20].  On May 13, 2025, KBP filed a motion to quash both subpoenas served upon Dr. McCabe and to vacate this court's April 2, 2025 order granting the § 1782 application.  [DE-30].

## II.  DR. MCCABE'S MOTION TO QUASH [DE-20] AND KBP'S MOTION TO VACATE [DE-30]

### A.   Applicable legal principles

Section 1782(a) allows, but does not require, a district court to order discovery of non-privileged matters for use in a foreign tribunal when certain requirements are satisfied.  *See* 28 U.S. Code § 1782(a); *see also Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 255, 124 S. Ct. 2466, 2478, 159 L. Ed. 2d 355 (2004).

The Fourth Circuit notes four mandatory requirements for the issuing of an order under the statute:

> (1) The application must be made to the "district court for the district in which the person resides or is found"; (2) the application must come from "an interested person" or a foreign tribunal; (3) the application must seek evidence, including "testimony" or "a document"; and (4) the evidence sought by the application must be "for use in a proceeding in a foreign or international tribunal."

*In re Newbrook Shipping Corp.*, 31 F.4th 889, 894 (4th Cir. 2022) (quoting 28 U.S. Code § 1782(a)).

The Fourth Circuit also highlighted four factors based on the Supreme Court's discussion in *Intel* that guide the court's broad discretion in the issuance of an order under § 1782(a) (the "*Intel* discretionary factors" or "*Intel* factors"):

6

(1) the involvement of "the person from whom discovery is sought" in the foreign proceeding, (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government, court or agency to U.S. federal-court judicial assistance," (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and (4) whether the request is "unduly intrusive or burdensome" in which case it "may be rejected or trimmed."

*In re Newbrook Shipping Corp.*, 31 F.4th at 896 (quoting *Intel*, 542 U.S. at 264–65, 124 S.Ct. 2466); *see also In re Banco Mercantil del Norte, S.A.*, 126 F.4th 926, 930 (4th Cir. 2025) (same).

**B.     Analysis**

The court confirmed at the May 19 hearing that, per his affidavit, Dr. McCabe does not have any documents in his possession, which are responsive to Novo's document subpoena and that no party contests this averred statement. *See* [DE-21] at ¶8. Accordingly, any motion to quash Dr. McCabe's document subpoena is DENIED AS MOOT. The analysis below is exclusively related to the subpoena seeking Dr. McCabe's deposition.

Dr. McCabe raises three arguments in support of his motion to quash, namely that (1) the instant proceedings do not support a 28 U.S.C. § 1782 application pursuant to *ZF Auto. US, Inc. v. Luxshare*, *Ltd.*, 596 U.S. 619 (2022); (2) the deposition subpoena would require Dr. McCabe to disclose material protected by a confidentiality agreement between Dr. McCabe and KBP-USA; and (3) the deposition subpoena is otherwise unduly burdensome. *See* [DE-22] at 2.

In response, Novo contends that (1) Novo appropriately seeks discovery for use in proceedings before foreign tribunals; and that (2) "Dr. McCabe's motion to quash pursuant to Rule 45 is properly denied" because (a) "Dr. McCabe's confidentiality obligations to KBP are not a basis to quash the subpoena" and (b) "Dr. McCabe fails to establish that the subpoena is unduly burdensome." [DE-23] at 4-10.

KBP argues that "Novo's Section 1782 Application should be vacated because it is

7

inconsistent with the statutory aims of Section 1782, discretionary factors, and Supreme Court precedent" and that "the subpoenas should be quashed under FRCP Rule 45." [DE-31] at 15, 28. With respect to its § 1782 arguments, KBP reasons that (1) "the worldwide freezing orders are without a U.S. equivalent"; (2) "any discovery would not assist the courts that already have issued the freezing orders," specifically because (a) "Novo already has filed its opposition to KBP's Application to Set Aside the Singapore Freezing Order, Nullifying Novo's Justification for Discovery," (b) "the courts that already have issued freezing orders now will focus on the dissipation of assets—of which Dr. McCabe is not alleged to have knowledge—and the *Mareva* standard renders any other discovery immaterial," and (c) "any deposition may not be admissible or will be accorded little to no weight"; (3) "Novo's subpoenas are an improper fishing expedition that seek to sidestep the Supreme Court's Prohibition on using Section 1782 for private foreign arbitration"; and (4) "the deposition subpoena places an undue and intrusive burden on Dr. McCabe, who is not a party to the foreign proceedings." *Id.* at 16-28. Under its Rule 45 argument, KBP reiterates its undue burden argument pursuant to Rule 45(d)(3)(A)(iv) and briefly argues that the subpoena should be quashed under Rules 45(d)(3)(A)(iii) and 45(d)(3)(B)(i), as the deposition would require disclosure of privileged or other protected matters, including trade secrets or other confidential research, development, or commercial information." *Id.* at 29.

In response, Novo argues that (1) "the court properly granted Novo's Section 1782 application" and (2) "KBP's motion to quash pursuant to Rule 45 is properly denied." [DE-41] at 11, 24. With respect to its § 1782 argument, Novo reasons that (a) "KBP does not dispute that Dr. McCabe is not a party to the foreign court proceedings"; (b) "KBP fails to establish that the foreign courts would not be receptive to the information Novo seeks," specifically because (i) "Novo's justifications for seeking discovery from Dr. McCabe have not been 'nullified'," (ii) "Dr.

8

McCabe's testimony is relevant to maintaining the freezing orders" in both the Singapore proceedings as well as the Cayman Proceedings," (iii) "the foreign courts will determine the admissibility of and weight of Dr. McCabe's testimony," and (iv) "The Singapore Court's denial of KBP's request to submit additional evidence is irrelevant to whether it will accept Dr. McCabe's evidence"; (c) "KBP fails to show that Novo is attempting to circumvent foreign proof-gathering limitations"; (d) "KBP fails to show undue burden"; and (e) "KBP's argument that *Mareva* injunctions are without a U.S. equivalent is irrelevant." *Id.* at 11-24. With respect to Rule 45, Novo incorporates by reference its undue burden and confidentiality arguments from its § 1782 discussion. *Id.* at 24.

As there is significant overlap between the arguments raised by Dr. McCabe and KBP, as well as between various arguments raised in KBP's memorandum [DE-31], the court addresses the parties' arguments under the headings below: (1) Limitations of § 1782 pursuant to *ZF Auto. US, Inc.* and *Intel* discretionary factors; (2) Confidentiality of materials pursuant to *Intel* discretionary factors and Rule 45; and (3) Undue burden pursuant to *Intel* discretionary factors and Rule 45.

### 1. Limitations of § 1782 pursuant to *ZF Auto. US, Inc.* and *Intel* discretionary factors

Both Dr. McCabe and KBP argue that the arbitration between Novo and KBP is the true driver of the discovery request and that it should therefore be denied pursuant to *ZF Auto. US, Inc.*, 596 U.S. 619. *See* [DE-22] at 4; [DE-31] at 7.

The Supreme Court in *ZF Auto. US, Inc.* made clear that § 1782's scope with respect to "proceeding[s] in a foreign or international tribunal" does not include "private arbitral panels." 596 U.S. 619, 627-28, 142 S. Ct. 2078, 2092, 213 L. Ed. 2d 163 (2022); *see also id.* at 633 ("Private

9

adjudicatory bodies do not fall within § 1782."). Dr. McCabe and KBP have not demonstrated, however, that concurrent arbitral proceedings preclude the use of § 1782 with respect to the proceedings before a foreign governmental tribunal. *ZF Auto. US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619, 632, 142 S. Ct. 2078, 2088, 213 L. Ed. 2d 163 (2022) (noting that § 1782 was not designed to apply "the resources of district courts to aid *purely* private bodies adjudicating *purely* private disputes abroad") (emphasis added). While the court should "consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," there is no prohibition *per se* of the same discovery being used in multiple proceedings. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 265, 124 S. Ct. 2466, 2483, 159 L. Ed. 2d 355 (2004). Accordingly, this court is required to determine whether the discovery in question is properly intended "for use in a proceeding in a foreign or international tribunal." *See* 28 U.S.C. § 1782(a). The court does not opine in the instant order on whether these discovery materials may also be used in arbitration proceedings, as discussed further below.

KBP notes that Novo already filed its opposition to KBP's set-aside application on April 25, 2025, and will not be permitted to submit additional evidence without permission from the SICC, which will not permit it unless "clearly necessary and in the interests of justice." [DE-31] at 14, 17. Notwithstanding the procedural challenges Novo may face, KBP has not demonstrated that evidence provided by Dr. McCabe's deposition would fail to satisfy the SICC's bar for submitting additional evidence. KBP further notes that (i) the hearing before the SICC will occur on May 23, 2025, (ii) it will be based on written submissions that were made by May 15, 2025, and (iii) Novo did not ask the SICC to defer the May 23 hearing until discovery is obtained from Dr. McCabe. *Id.* at 15. The fact that Dr. McCabe's deposition did not warrant delaying the entire

10

proceedings does not mean that the deposition testimony could not be put to meritorious use. KBP contends that "any deposition may not be admissible or will be accorded little to no weight." *Id.* at 21. Specifically, KBP represents that "[t]he SICC will not admit Dr. McCabe's deposition transcript, should he sit for a deposition, or likely will accord little or no weight to it." *Id.* at 22. Furthermore, KBP argues that Novo will not be permitted to submit additional affidavits unless the SICC grants permission based on "clear[] necess[ity] and in the interests of justice." [DE-31] at 18.

The court is not persuaded by any of these arguments. The mere fact that Novo may face additional hurdles before using Dr. McCabe's deposition testimony in the foreign proceedings does not mean that the deposition is not being taken for use in such proceedings or that such foreign proceedings represent a mere pretext for the discovery's "true purpose." Given the large financial sums at issue in the foreign proceedings pursuant to the *Mareva* order, the court finds that a reasonable party in good faith could zealously pursue discovery even if there is no guarantee that it will be admissible. The Fourth Circuit has recently found that:

> to satisfy the "for use" requirement, the applicant need not demonstrate that the requested discovery is "essential for victory in the foreign proceeding[,]" [but rather] it need only show that "there is a reasonable possibility that the evidence sought will be employed with some advantage or serve some use in the proceeding."

*In re Banco Mercantil del Norte*, S.A., 126 F.4th 926, 931 (4th Cir. 2025).

This court notes that one of the factors the SICC will consider with respect to setting aside the worldwide freezing injunction is whether the claimant has "a good arguable case on the merits" of their claim. *See* [DE-31-15] at 7. While KBP cites precedent that this requirement constitutes a "'low bar' that only entails 'a preliminary assessment,'" (*id.* at 8 (citing *Farooq Ahmad Mann v. Xia Zheng*, (2024), SGHC 182 at ¶42)), KBP has made no representations that it has conceded this

11

point before the SICC or that this point is no longer at issue before the SICC.

KBP cites another case in this circuit in which a § 1782 application failed to satisfy the *Intel* discretionary factors where it sought "early discovery that he cannot seek under Brazilian law." *Pereira v. Nucor Corp.*, No. CV 3:23-MC-00024-FDW-SCR, 2023 WL 4143229, at *5 (W.D.N.C. June 22, 2023), *dismissed*, No. 23-1775, 2024 WL 3548462 (4th Cir. June 24, 2024). KBP has not shown that the discovery requested here would not be permitted under the rules of the SICC, the tribunal in question here.

In short, the court is persuaded by the Second Circuit's finding that "allegations of pretext are appropriately analyzed when the district court exercises its discretion to grant or deny an application and/or considers whether a use restriction is appropriate, not—as Appellants assert—when it considers whether an applicant has satisfied Section 1782's statutory 'for use' requirement." *In re B&C Kb Holding GmbH*, No. 23-1014, 2024 WL 3170983, at *3 (2d Cir. June 26, 2024). Indeed, "*ZF Automotive* [does not contradict the finding] . . . that Section 1782 'does not prevent an applicant who lawfully has obtained discovery under the statute with respect to one foreign proceeding from using the discovery elsewhere unless the district court orders otherwise.'" *Id.*

The court does not find any merit in KBP's argument that the timing or *ex parte* nature of Novo's § 1782 application is suggestive of pretext, bad faith or subterfuge. The court credits Novo's argument that *ex parte* conduct may be reasonable in the context of *Mareva* orders to preempt the dissipation of assets. Furthermore, the court does not find that Novo's timing in filing the § 1782 motion is inconsistent with good faith when considered in the context of the overall timing in this case, as discussed above.

Similarly, the court is also unpersuaded by KBP's equity-based argument that because

12

"Novo has opposed allowing KBP to submit additional evidence, it would be inequitable for this [c]ourt to facilitate discovery from Dr. McCabe for Novo to submit to the SICC." *See* [DE-31] at 21 n. 16. Provided there is a good faith basis in law to do so, whether either party's motions or evidence may be admitted by the SICC is a question for the SICC.

KBP notes that world-wide freezing or "*Mareva*" injunctions have no U.S. equivalent, are a "nuclear weapon of the law" given their broad scope, and would not set an example for other countries to emulate. *Id.* at 16-17. The court is not persuaded by this argument. There are numerous mechanisms in U.S. law that may not find a specific corollary in the law of the foreign jurisdiction, where the U.S. courts would nonetheless seek assistance from a foreign tribunal. Additionally, § 1782 does not require that the "foreign proceedings" in question have an exact corollary under U.S. law, nor has KBP pointed to any binding case law demonstrating that this must be the case.

Here, the court does not find that any discretionary factors weigh against the granting of the § 1782 application for the reasons discussed above.

### 2. Confidentiality of materials pursuant to *Intel* discretionary factors and Fed R. Civ. P. 45

Dr. McCabe contends that the subpoena requiring his deposition testimony ("deposition subpoena") would require him to disclose material protected by a confidentiality agreement between Dr. McCabe and KBP-USA. [DE-22] at 5. Dr. McCabe notes that during his employment with KBP, he was required to enter a confidentiality agreement with KBP-USA, which, by its terms, survived his employment with the KBP group. [DE-20] at 2.

KBP argues that a subpoena may be quashed if it "requires disclosure of privileged or other protected matter[, including a trade secret or other confidential research, development, or

13

Case 7:25-mc-00001-M-BM    Document 46    Filed 05/20/25    Page 13 of 20

commercial information], if no exception or waiver applies." [DE-31] at 29 (citing Fed. R. Civ. P. 45(d)(3)(B)(i)).

Novo argues that under the APA, "KBP transferred to Novo rights to virtually all materials relating to Ocedurenone." [DE-23] at 8 (citing APA § 2.1(a)(v)-(vi)). The court finds that to the extent that a deposition of Dr. McCabe would address any topics, to which Novo does not have rights pursuant to the APA, such topics could be adequately protected through a protective order. *Cf. First Sealord Sur. v. Durkin & Devries Ins. Agency*, 918 F. Supp. 2d 362, 384 (E.D. Pa. 2013) ("In the event that there is [a confidentiality agreement] that precludes disclosure, a protective order could be entered to ensure that no confidential or sensitive information is unnecessarily disclosed.").

Accordingly, as directed at the May 19 hearing, the parties shall file, for the court's consideration, a proposed joint protective order for use at the deposition of Dr. McCabe. The court finds any other confidentiality concerns in Dr. McCabe's motion to quash [DE-20] and KBP's motion to vacate [DE-30] to be without merit.

### 3. Undue burden pursuant to *Intel* discretionary factors and Fed R. Civ. P. 45

Dr. McCabe claims the deposition would be unduly burdensome because "[h]e no longer has access to any of the information he might reasonably need to prepare and provide testimony" and because "he is left to his own devices to try to reconstruct the events of a multi-year medication study." [DE-22] at 6. Similarly, KBP argues that "the deposition subpoena places an undue and intrusive burden on Dr. McCabe, [because he] is not a party to the foreign proceedings." [DE-31] at 26. Both Dr. McCabe and KBP object to the Dr. McCabe's deposition subpoena because it "is unbounded by any topics." [DE-31] at 12. KBP also argues that the limitless subpoena would run afoul of Federal Rule of Civil Procedure 45(d)(3)(A)(iv), which allows an individual to quash a

14

subpoena if it would create an undue burden. [DE-31] at 28 (citing Fed. R. Civ. P. 45(d)(3)(A)(iv)). KBP argues that in light of the arguments raised above, "requiring Dr. McCabe to sit for a deposition is unnecessary, highly prejudicial, and burdensome on him as a non-party to the *Mareva* proceedings and the arbitrations." [DE-31] at 29.

Novo's document subpoena seeks six broad categories of documents from Dr. McCabe. [DE-31] at 12. Novo contends that it has already made the topics for Dr. McCabe's deposition "clear by seeking six categories of documents 'and related testimony.'" [DE-41] at 20 (quoting [DE-2] at 9). Novo further notes that there is no burden for Dr. McCabe based on preparation because "Novo is seeking to examine Dr. McCabe solely based on his own personal knowledge of matters in which he was closely involved." *Id.*

The court does not find that KBP or Dr. McCabe have shown that Dr. McCabe's testimony would subject him to undue burden. The court notes that the parties represented at the May 19 hearing that Dr. McCabe's deposition would take place virtually. Moreover, as Novo noted, given that the deposition only seeks Dr. McCabe's personal knowledge about topics he learned while employed by the KBP group, the court does not find that the deposition would create an undue burden with respect to preparation.

Accordingly, Dr. McCabe's motion to quash [DE-20] and KBP's motion to vacate and to quash [DE-30] are DENIED.

### III. KBP AND DR. MCCABE'S ORAL MOTION TO LIMIT THE USE OF DR. MCCABE'S DEPOSITION TESTIMONY

At the conclusion of the May 19 hearing, following the court's ruling on Dr. McCabe's motion to quash and KBP's motion to vacate, KBP and Dr. McCabe made a joint oral motion for the court to limit the use of Dr. McCabe's deposition testimony to the foreign proceedings and

expressly preclude its use in the arbitration between Novo and KBP in New York. Novo opposed the oral motion. Neither party has filed a fully briefed motion on the question of whether limitations should be placed on the use of Dr. McCabe's deposition testimony outside of the foreign proceedings with respect to arbitral proceedings or otherwise. The court therefore finds that a ruling on this question would be premature. To the extent that KBP and/or Dr. McCabe wish to file a written motion on this issue, the court will consider any such motion and any response filed thereto. KBP and Dr. McCabe's oral motion to limit the use of Dr. McCabe's deposition testimony is, therefore, DENIED WITHOUT PREJUDICE.

## IV. KBP'S MOTION TO SEAL [DE-33]

### A. Applicable Legal Principles

The Fourth Circuit has directed that in deciding whether to seal documents filed with it, the court must first determine if the source of the public's right to access the documents is derived from the common law or the First Amendment. *Doe v. Public Citizen*, 749 F.3d 246, 266 (4th Cir. 2014); *Stone v. Univ. of Md.*, 855 F.2d 178, 180 (4th Cir. 1988). The common law presumption in favor of access attaches to all judicial records. *Doe*, 749 F.3d at 267. A judicial record is one that "'play[s] a role in the adjudicative process, or adjudicate[s] substantive rights.'" *Webb v. Murphy-Brown*, LLC, No. 4:14-CV-152-BR, 2021 WL 1342523, at *1 (E.D.N.C. 9 Apr. 2021) (quoting *In re Application of U.S. for an Order pursuant to 18 USC Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013)).

In contrast, First Amendment protection extends to only certain judicial records. *Doe*, 749 F.3d at 267. Specifically, the First Amendment right of access applies only to judicial records that pass the "experience and logic test." *Webb*, 2021 WL 1342523, at *2 (quoting *In re Application*, 707 F.3d at 290-91). It requires that "'the place and process have historically been open to the

16

press and general public'" and "'public access plays a significant positive role in the functioning of the particular process in question.'" *Mears*, 2014 WL 5018907, at *3 (quoting *Press-Enterprise Co. v. Superior Court of Ca. for Riverside Cnty.*, 478 U.S. 1, 8 (1986)).

The court finds that the request for arbitration [DE-32], which is the subject of the instant motion to seal [DE-33] does not satisfy the experience and logic test set out in *In re U.S. for an Ord. Pursuant to 18 U.S.C. Section 2703(D)*. 707 F.3d at 291. Specifically, the court does not find that private arbitrations and the filings associated with them have "been open to the press and general public," or that the "public access plays a significant positive role in the functioning of" private arbitrations. *See id.* (internal quotations and quotation markets omitted).

The presumption of access under the common law is not absolute and its scope is a matter left to the discretion of the district court. *Va. Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004). The presumption "'can be rebutted if countervailing interests heavily outweigh the public interests in access,' and '[t]he party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption.'" *Id.* (quoting *Rushford v. New Yorker Magazine*, Inc., 846 F.2d 249,253 (4th Cir. 1988)). "Some of the factors to be weighed in the common law balancing test 'include whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records.'" *Id.* (quoting *In re Knight Publ. Co.*, 743 F.2d 231,235 (4th Cir. 1984)).

The Fourth Circuit has further required that:

When presented with a motion to seal, [the court must]: (1) provide public notice of the sealing request and a reasonable opportunity for the public to voice objections to the motion; (2) consider less drastic alternatives to closure; and (3) if it

17

determines that full access is not necessary, it must state its reasons—with specific findings—supporting closure and its rejections of less drastic alternatives.

*Doe v. Pub. Citizen*, 749 F.3d 246, 272 (4th Cir. 2014) (citing *In re Knight Pub. Co.*, 743 F.2d 231, 234–35 (4th Cir.1984).

**B.     Analysis**

KBP seeks to seal [DE-33] Novo's Request for Arbitration ("request for arbitration") with the International Chamber of Commerce ("ICC") [DE-32].  KBP notes that the APA and Transition Services Agreement ("TSA"), which are allegedly at the center of the underlying dispute, provide that "neither a Party nor an arbitrator may disclose the existence, content, or results of a Dispute arbitration without the prior written consent of both Parties."  [DE-34] at 2.

This court has previously sealed documents, which were the subject of confidentiality agreements.  *See Arch Ins. Co. v. Starr Surplus Lines Ins. Co.*, No. 5:21-CV-4-FL, 2021 WL 5287162, at *1 (E.D.N.C. Oct. 28, 2021) (honoring a confidentiality provision in a settlement agreement that "prevent[ed] either party from disclosing any information concerning the terms of the Agreement to anyone"); *Inventiv Health Consulting, Inc. v. French*, No. 5:18-CV-295-D, 2020 WL 728148, at *10 (E.D.N.C. Feb. 12, 2020) (granting a motion to seal where "the documents consist of materials considered confidential by the filing parties" and were subject to a protective order); *but see Covington v. Union Mem'l Hosp.*, No. CV DKC 22-2655, 2024 WL 3784539, at *35 (D. Md. Aug. 13, 2024) ("[A] protective order is not sufficient, by itself, to justify the continued sealing of filings in court.") (internal quotations and quotation marks omitted).

The court specifically finds that the commercially sensitive nature of the private arbitration proceedings between Novo and KBP heavily outweigh the public interests in access.  *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598, 98 S. Ct. 1306, 1312, 55 L. Ed. 2d 570 (1978) (noting

18

that "sources of business information that might harm a litigant's competitive standing" may overcome the common law right of access). Furthermore, given the documents limited length and the density of material terms, the court does not find an alternative to sealing would be viable.

The motion to seal was filed on May 13, 2025. [DE-33]. Accordingly, while the court finds that the parties have otherwise satisfied the requirements under *Doe v. Pub. Citizen*, 749 F.3d at 272, the court will allow additional time to ensure sufficient public notice of the sealing request and a reasonable opportunity for the public to voice objections to the motion before allowing this order to seal to take effect. *See United States v. Griffith*, No. 5:04-CR-347-2F, 2006 WL 8442701, at *2 (E.D.N.C. Aug. 2, 2006) (finding a delay of "over three weeks" to constitute proper notice and an opportunity for objection).

## V. CONCLUSION

For the reasons provided above, as well as those stated on the record at the May 19 hearing before the undersigned, Dr. McCabe's motion to quash [DE-20] is DENIED; KBP's motion to vacate [DE-30] is DENIED; KBP and Dr. McCabe's joint oral motion to limit the use of Dr. McCabe's deposition testimony is DENIED WITHOUT PREJUDICE; and KBP's unopposed motion to seal [DE-33] is GRANTED. Accordingly, as ordered during the May 19 hearing:

1. The parties SHALL file a proposed joint protective order for use at Dr. McCabe's deposition no later than 8:00 a.m. Eastern Standard Time on May 20, 2025, for the court's consideration.[5]

2. The deposition of Dr. McCabe may proceed. Dr. McCabe's deposition shall be conducted by remote means, as agreed between the parties, on May 20, 2025, and may commence

---

[5] As reflected in the docket of this matter, on May 20, 2025, the parties filed a joint motion for protective order [DE-43] in compliance with this directive. The court granted the joint motion and entered a protective order [DE-45] prior to the time directed herein for the commencement of Dr. McCabe's deposition.

19

no earlier than 12:00 p.m. The deposition shall last no longer than five hours.

       3.       Unless any member of the public files an objection or notice with respect to KBP's unopposed motion to seal [DE-33] within two weeks of the date of the instant order, the Clerk of Court is DIRECTED to permanently seal the document at [DE-32]. In the event, that any member of the public files an objection or notice with respect to KBP's unopposed motion to seal [DE-33] within two weeks of the date of the instant order, the Clerk of Court SHALL NOT permanently seal the proposed sealed exhibit [DE-32], without further direction from the court.

      SO ORDERED, this 20th day of May, 2025.

_____
Brian S. Meyers
United States Magistrate Judge